STATE, RESPONDENT, *v.* McCARTHY, APPELLANT.

(No. 2,455.)

(Submitted November 5, 1907. Decided November 23, 1907.)

[92 Pac. 521.]

*Criminal Law—Grand Larceny—Evidence—Insufficiency—Cross-examination— Accomplices — Corroboration— Record—Review—Instructions.*

Criminal Law—Evidence—Insufficiency—Duty of Court.
   1.   Where, in a criminal cause, there is no substantial evidence to support a verdict of guilty, it becomes the duty of the district court, as a matter of law, to vacate and set it aside, and refusal so to do is reversible error.

Same—Grand Larceny—Evidence—Insufficiency—Review.
   2.   Evidence examined and held insufficient to sustain a conviction of the crime of grand larceny.

Same—Evidence Necessary to Convict.
   3.   Mere suspicions or probabilities, however strong, are insufficient to convict of crime. There must be some substantive testimony to justify a judgment of conviction.

Same—Grand Larceny—Accomplices—Evidence—Guilty Intent.
   4.   The testimony of a woman, an alleged accomplice of defendant charged with grand larceny, relative to an understanding she had with him that, when present in a wineroom adjacent to defendant's saloon, she was to induce men to drink excessively so as to more readily be

able to get hold of their money, was competent as tending to show a system or plan uniformly pursued, and thus to show guilty knowledge or criminal intent.

Same—Evidence—Accomplices—Corroboration.

5. Under Penal Code, section 2089, the testimony of an accomplice is insufficient to support a conviction, unless corroborated by other evidence which, in itself and independently of that of the accomplice, tends to connect the accused with the crime alleged to have been committed.

Same—Grand Larceny—Evidence—Cross-examination.

6. In a prosecution for grand larceny where the prosecuting witness claimed to have been deprived of his property while in the wineroom adjoining defendant's saloon with an alleged female accomplice of defendant, it was error to refuse permission to defendant's counsel, on cross-examination of the woman, to interrogate her as to whether the complaining witness had an act of sexual intercourse with her on the floor of the room. The offered testimony was competent as showing what opportunity the woman had to take the money without the aid or knowledge of the defendant.

Same—Record—Review—Instructions.

7. Where the record in a criminal cause, tried after Chapter 82 of the Laws of 1907, page 197, went into effect, providing that the trial court shall pass upon any objections to instructions requested or proposed to be given, and that the court stenographer shall be present at the settlement of the instructions and note all objections and exceptions of counsel to those given or refused, does not show that the court ruled, or was requested to rule, on defendant's requests for instructions or his objections to those given, errors relating to them will not be considered on appeal, since error cannot be predicated on the mere silence of the court.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

W. H. McCARTHY was convicted of grand larceny, and appeals from the judgment of conviction and from an order denying him a new trial.   Reversed and remanded.

*Mr. Jesse B. Roote, Mr. Peter Breen, Messrs. Barta & Barta,* and *Mr. A. C. McDaniel,* for Appellant.

The main fact in controversy in this case was, Did the appellant steal the money charged in the information?   And any other facts tending to connect other offenses were irrelevant and incompetent testimony. (*Berney* v. *State,* 69 Ala. 233; *Whilden* v. *State,* 25 Ga. 396, 71 Am. Dec. 181; *People* v. *Corbin,* 56 N. Y. 363, 15 Am. Rep. 427.) As to the statements of an accomplice after the commission of the crime, confessions by

an accomplice in crime not made in the presence of the defendant, nor during the commission of the offense or in its furtherance, and not part of the *res gestae*, are not admissible against the defendant. (*State* v. *English*, 14 Mont. 399, 36 Pac. 815.) Nor, even if a conspiracy is shown *aliunde*, are the declarations of one conspirator admissible against the others, if not made during the prosecution of the undertaking, but after the common design is accomplished or abandoned. (*State* v. *Duncan*, 64 Mo. 262.)

The law does not permit a decision to be made on remote inferences. (*Dyson* v. *State*, 26 Miss. 362; *Rye* v. *State*, 8 Tex. App. 153; *United States* v. *Ross*, 92 U. S. 282, 23 L. Ed. 707.)

One of the objects of cross-examination is to elicit the whole truth of the transactions only partly explained. Questions intended to follow up designed or accidental omissions of the witness, or to call out facts to contradict, explain or modify some inference which might otherwise be drawn from the testimony, are legitimate cross-examination. (*People* v. *Russel*, 46 Cal. 121; *Reiser* v. *Portere*, 106 Mich. 102, 63 N. W. 1041; *Graham* v. *Larimer*, 83 Cal. 173, 23 Pac. 286; *Yeoman* v. *State*, 21 Neb. 171, 31 N. W. 669; *Haynes* v. *Ledyard*, 33 Wis. 319; *People* v. *Bidleman*, 104 Cal. 608, 38 Pac. 502; *People* v. *Gordon*, 103 Cal. 568, 37 Pac. 534; *Vogel* v. *Harris*, 112 Ind. 494, 14 N. E. 385; *Hay* v. *Reed*, 85 Mich. 296, 48 N. W. 507; *Davis* v. *Hayes*, 89 Ala. 563, 8 South. 131.)

It is necessary that the evidence corroborating an accomplice shall connect, or tend to connect, defendant with the commission of the crime. Corroborative evidence is insufficient where it merely casts a grave suspicion on the accused. It must not only show the commission of the offense and circumstances thereof, but must also implicate the accused in it. Hence, corroboration relating exclusively to the *corpus delicti* and the circumstances thereof will not sustain a conviction. (*State* v. *Geddes*, 22 Mont. 68, 55 Pac. 919; *State* v. *Spotted Hawk*, 22 Mont. 33, 55 Pac. 1026; *State* v. *Calder*, 23 Mont. 504, 59 Pac. 903; *Taylor* v. *Commonwealth*, 10 Ky. Law Rep. 169, 8 S. W.

461; *Craft* v. *Commonwealth,* 80 Ky. 349; *People* v. *Plath,* 100 N. Y. 590, 53 Am. Rep. 236, 3 N. E. 790; *State* v. *O'Dell,* 8 Or. 30; *People* v. *Ames,* 39 Cal. 403; *People* v. *Compton,* 123 Cal. 403, 56 Pac. 44; *People* v. *Hoagland,* 138 Cal. 338, 71 Pac. 359; *State* v. *Willis,* 9 Iowa, 582; *Blois* v. *State,* 92 Ga. 584, 20 S. E. 12; *State* v. *Jarvis,* 18 Or. 360, 23 Pac. 251; *Childers* v. *State,* 52 Ga. 106; *State* v. *Welch,* 22 Mont. 92, 55 Pac. 927; *State* v. *Knudtson,* 11 Idaho, 524, 83 Pac. 226.)

*Mr. Albert J. Galen,* Attorney General, and *Mr. E. M. Hall,* Assistant Attorney General, for Respondent.

MR. JUSTICE SMITH delivered the opinion of the court.

The defendant in the above-entitled action was convicted in the district court of Silver Bow county of the crime of grand larceny, and appeals from the judgment and also from an order denying him a new trial.

Numerous errors were relied upon by his counsel for a reversal of the judgment and order, among others, that the court erred in overruling the motion for a new trial, for the reason that the evidence is insufficient to justify the verdict. If this motion should have been granted, it will be unnecessary for this court to examine many of the other questions raised by appellant.

In the case of *State* v. *Foster,* 26 Mont. 71, 66 Pac. 565, the court said: "The rule has frequently been declared by this court that an application for a new trial on the ground that the evidence is insufficient to justify the verdict, or that the verdict is contrary to the evidence, is addressed to the sound discretion of the trial court, and that, where there is a substantial conflict in the evidence, the action of that court in granting or denying the application will not be disturbed on appeal. If, however, there is no substantial evidence to support the verdict, a different rule applies. In the latter case it becomes the duty of the trial court, as a matter of law, to va-

cate and set aside the verdict, and, if it refuses to do so, its action will be held erroneous.''

At the conclusion of the state's testimony, the defendant, through his counsel, requested the court to instruct the jury to bring a verdict of not guilty, ''for the reason that there is no testimony whatever to connect this defendant with the commission of the crime, and no corroboration whatever of the testimony of the accomplice in this case.'' This instruction was refused.

The facts shown by the evidence are, substantially, as follows: William Wright, a resident of Pony, Montana, arrived in Butte between 2 and 3 o'clock on the morning of January 9, 1907. He went to bed at a rooming-house near the railroad depot in South Butte a short time after his arrival, and arose about 7 o'clock the same morning, when he took two drinks of whisky, had his breakfast, boarded a street-car, and went to the central part of the city of Butte, where he remained until about 1 o'clock. He then returned to the vicinity of the railroad station in South Butte, and went into the defendant's place, which was a saloon directly across from the station. Earlier in the day he had met a man called ''the Frenchman,'' in South Butte, and afterward met this man up town, had a drink or two with him, and they returned to South Butte on the street-car together. He says in his testimony that he ''knocked around'' South Butte for a few hours in the afternoon, and finally went into defendant's place, where he had another drink or two with the ''Frenchman,'' and, as he was about to leave, the defendant McCarthy tapped him on the shoulder and said, ''I want to introduce you to a friend of yours.'' He then went into a wineroom in the rear of the saloon, where he met a woman, for whom he bought three or four drinks and with whom he took at least one drink himself. McCarthy did not remain in the wineroom after introducing him to the woman, or, so far as the witness Wright knows, go back to the wineroom again while Wright was there. Wright wore two pairs of overalls, in the pocket of the inner pair of which he had a

pocketbook containing about $110, but, he says, he did not ex-
hibit the bulk of his money to the woman in the wineroom.
She asked him how much money he had, but he refused to tell
her. "Finally," he says, "the woman bought a drink," and,
after taking it, he does not remember anything for about four
hours. He testified that he went to sleep in the wineroom, and,
when he woke up, he was out in the barroom, sitting in a chair,
and the defendant was sitting about three feet from him. There
were several other persons in the room at this time. He felt
for his money, and found that the pocketbook had been taken
from his inner overalls pocket, and placed in the outer pair,
and that the money was all gone, with the exception of $3 or
$4. He made no complaint to McCarthy, but walked out of
the saloon, and told some one on the outside that he had been
robbed. While in the wineroom, he gave the woman $3. He
does not know where he may have been between the time he
went to sleep in the wineroom, after he took the last drink,
and the time he was awakened in the chair, but thinks that he
must have been carried from the wineroom to the outer saloon
by some one. He was feeling all right when he awakened—
the same as he usually felt when he woke up in the morning.
He afterward went back to McCarthy's place, and took a drink
with a stranger.

A witness, called May Miner, testified that she was the woman
to whom Wright was introduced by McCarthy; that she had
several drinks with him in the wineroom, when he appeared
to become very much intoxicated, became angry at her because
she would not tell him the number of her room, and left the
room. She started to leave a few moments later, and, as she
was passing out of the door, she met the defendant McCarthy,
who asked her, "Where is the money?" She indicated by a
motion that Wright had it in his trousers pocket. She says
that on the night in question she was sent for to come to Mc-
Carthy's place, where she had often been before; that she does
not know who sent for her, but that she had an understand-
ing with McCarthy, prior to this time, that, when she was in the

wineroom, she should induce men to drink as much as possible. She testifies: "I knew what was expected—that I should drink with the gentlemen. Mr. McCarthy made the suggestion at one time that I might help the men to spend their money, but on this day, the 9th, I had not seen Mr. McCarthy until I went down to the saloon, and I saw him not at all after that evening. The only real understanding was that he [the man introduced] was to be induced to drink as much as possible for the purpose of getting all of his money. I know of two circumstances where men went away with no money; but there was only one case where the money was willfully taken away from the man to my knowledge. In that case a gentleman had been drinking wine and he refused to pay McCarthy, but McCarthy took the money, just simply for the wine; and in the other case the man had gone to sleep and was dropping his money, and I took it in my hand and called for McCarthy, and he took it, and gave me a part of it. This last man had been drinking, but he had been paying for his drinks as he got them. When McCarthy introduced Wright to me, I understood my duties to be the same as in other instances; that is, to induce him to drink as much as he would. I did not think when Wright first came into the room that he was at all intoxicated, but when he was leaving he seemed to be quite intoxicated. I saw his money that night when he took it out to pay for a drink. I never had any conversation with McCarthy regarding the method of procedure going on in that saloon with relation to strangers and their money. The only thing I understood was to have them drink. McCarthy never told me in so many words what he desired to have them drink excessively for, but there was a natural understanding from his first invitation for me to come there that women could induce men to drink when gentlemen could not. There was an understanding between McCarthy and me as to the reason why he desired them to drink much. I knew that the men that came there were often relieved of their money, and naturally supposed that was to be the case in the cases that I would be

called for. When the old gentleman got angry because he could not get the number of my room, he went out in the direction of the bar. He left there, and entered the saloon proper before I got out of the passage. I am positive of that. I did not interfere with him after he left there, and I did not see him any more.''

On cross-examination of this witness, the defendant's counsel offered to prove that Wright and the woman had an act of sexual intercourse on the floor in the wineroom. The county attorney objected to this line of cross-examination on the ground that it was irrelevant and immaterial, and the court sustained the objection, the defendant excepting to the ruling of the court.

The witness Hoolihan testified that he was a checker for the Butte Transfer Company, and, as such, his duties were to check baggage on the trains in and out of Butte; that some time prior to January 9th McCarthy had requested him, in substance, if he became acquainted with any travelers who desired to spend their money to bring them over to McCarthy's saloon, and that in one instance McCarthy invited a man who had been taken over there by the witness to go back into the wineroom and meet a woman. The foregoing is, in substance, all of the testimony introduced by the state.

The defendant did not go on the witness stand; but a witness, Edward Dwyer, the night bartender in defendant's saloon, testified that on the evening of the 9th about 9:30 o'clock, Wright came out of the wineroom and treated three or four men at the bar, including the defendant McCarthy. This witness also testified that Wright did not sit down and go to sleep in the saloon at any time that night; that on the following morning Wright walked into the saloon as the witness was about to leave his work, and they had a drink together; and that Wright left the saloon the evening before with the ''Frenchman.''

The witness Frank Smith testified for the defendant that he saw the complaining witness, Wright, about 9 o'clock on the evening of January 9th drinking at the bar in defendant's

saloon, and that, when he left the place, he was accompanied
by the "Frenchman." This witness also stated that Wright
afterward spent considerable money around the saloons and
lunchrooms in South Butte, and that Wright told him the next
morning that he did not know who robbed him, or where he was
robbed, but that he thought the woman got his money, that
it must have been some one "pretty slick that got him, be-
cause he was awake all the time, and knew what he was doing,
and he thought it was the woman who got his money, because
he was wide awake, and that she must have got it." Wright
afterward contradicted all of the testimony of this witness.

The defendant also produced in evidence a subpoena for the
witness Harry Clifford, known as "the Frenchman," which had
been regularly served on Clifford, but to which he failed to re-
spond; and it was also shown that, upon a warrant being is-
sued for his arrest, his whereabouts could not be ascertained.

The theory of counsel for the state at the trial was, that the
defendant and the witness May Miner had engaged in a com-
mon purpose to induce men to drink in the saloon and to rob
them when they became intoxicated. It was upon this theory
that testimony was elicited from the woman as to the experi-
ences of other men who had been introduced to her by McCarthy.
But, as was said in the case of *State* v. *Foster, supra,* conceding,
for the sake of argument, that all of this character of evidence
was competent and material to show a conspiracy to commit
larceny by the defendant and his associates, and that it is suffi-
cient to establish such a conspiracy, there is no evidence in
the record to justify the conclusion that either of them com-
mitted the particular larceny in question. There must be some
substantive testimony to justify the judgment of a court. (*Ol-
sen* v. *Montana Ore Pur. Co.,* 35 Mont. 400, 89 Pac. 731; *Howie*
v. *California Brewing Co.,* 35 Mont. 264, 88 Pac. 1007.) Mere
suspicions or probabilities, however strong, are not sufficient
basis for a conviction of crime.

We think the testimony of the woman as to her understand-
ing with the defendant and their former acts in conformity

thereto was competent. In the case of *State* **v.** *Newman,* 34 Mont. 434, 87 Pac. 462, this court held that proof may be made by the state of facts tending to show a uniform course of action recently pursued—a system or plan on the part of the accused—for the purpose of showing guilty knowledge or criminal intent. (See, also, 12 Cyc. 411.)

Eliminate the testimony of May Miner, and there is no evidence tending to connect the defendant with the loss of the money by Wright, except the fact—which in itself was non-criminal—that he introduced the complaining witness to the woman. If defendant and the woman were co-conspirators, then she was an accomplice, and her testimony was not corroborated by other evidence, which in itself, and without the aid of her testimony, tended to connect the defendant with the commission of the offense charged. (Pen. Code, sec. 2089.) Wright's testimony did not tend to corroborate that of the woman, because upon the very point as to which it required corroboration, to-wit, his becoming unconscious in the wineroom, she contradicted him by testifying that he left the room before she did. There is nothing in the record to corroborate her statement that the defendant inquired where Wright carried his money. In giving that bit of testimony, she may have been trying to shield herself by directing suspicion toward McCarthy.

We think the testimony was wholly insufficient to warrant a verdict of guilty, and should not have been submitted to the jury.

We are also of opinion that the defendant was entitled to prove every act of Wright and the woman in the wineroom. The testimony offered, while offensive, was nevertheless legally competent, as showing what opportunity the woman had to take Wright's money without the aid or knowledge of the defendant.

The appellant assigns error upon the action of the court in giving certain instructions to the jury, and refusing to give others proposed and requested by him. We do not pass upon the correctness of the instructions, either given or refused. The

Tenth Legislative Assembly (Laws 1907, Chapter 82, p. 197) revised the practice of the courts in regard to instructions to juries, by providing, among other things, that the court shall pass upon any objections to instructions requested, and also those proposed to be given by the court. It also provided that the court stenographer shall be present at the settlement of the instructions, and shall take down all the objections and exceptions of counsel to all and any of the instructions given or refused by the court, together with the modifications made therein, and the ruling of the court thereon. It does not appear by the record that the court ever ruled, or was ever requested to rule, on either the defendant's requests for instructions or his objections to those given by the court. Error cannot be predicated upon the mere silence of the court. (*State* v. *Biggerstaff*, 17 Mont. 510, 43 Pac. 709.) Therefore we do not consider the alleged errors relating to the instructions. As to how specific the bill of exceptions should be in disclosing what took place at the settlement of the instructions we do not decide, because the point has not been argued in this case, and we do not deem it wise to construe the new law without the assistance of argument by counsel.

The judgment and order of the district court of Silver Bow county are reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.