STATE, RESPONDENT, *v.* KONON, APPELLANT.

(No. 6,415.)

(Submitted February 15, 1929. Decided March 5, 1929.)

[274 Pac. 1060.]

*Mr. George W. Farr,* for Appellant, submitted a brief and argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. T. H. MacDonald,* Assistant Attorney General, for the State, submitted a brief; *Mr. MacDonald,* and *Mr. Dencil R. Young,* County Attorney of Fallon County, argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

The defendant was, by information, charged with the crime of assault in the first degree, alleged to have been committed

on August 20, 1927, upon the person of his brother, Luca Konon, "with a means or force likely to produce death, to-wit, a quantity of high explosive, the exact nature of which is unknown, and a contrivance or apparatus for exploding the same; that the said defendant, knowing that the said Luca Konon, riding in his automobile, would pass over a certain trail, leading to the home of the said Luca Konon, placed said explosive in or upon the ground in about the middle of said trail, and arranged an apparatus consisting, among other things, of sticks, bolts, strings and a rifle lock, in such a manner that when the said Luca Konon should pass over the same, the apparatus would discharge and explode said explosive; that by means of the apparatus or contrivance described the said defendant wilfully, unlawfully and feloniously exploded said high explosive when the said Luca Konon rode over said trail, and while the car of the said Luca Konon was directly over said explosive, with the felonious intent upon the part of him, the said defendant, to kill a human being, to-wit, the said Luca Konon."

Upon the defendant's plea of not guilty, the case was tried to a jury. At the conclusion of the state's case in chief, the defendant moved the court to dismiss the action and discharge the defendant because of the insufficiency of the evidence, which was denied. Testimony was thereupon introduced on behalf of the defendant and by the state in rebuttal, and the cause submitted to the jury, which rendered a verdict finding the defendant guilty of assault in the second degree, and leaving the court to fix the punishment, with a recommendation of clemency. The court sentenced the defendant to a term of not less than two nor more than five years in the state prison, and entered judgment accordingly. The defendant moved the court for a new trial, which was denied, and the case is now before us on appeal from the judgment and order denying the defendant a new trial.

The several specifications of error assigned by the defendant present but one question necessary to be considered in

disposition of this appeal, viz.: Is the evidence sufficient to support the verdict and judgment?

We have made careful examination of the entire record, and do not find any substantial evidence to sustain the conviction. No useful purpose will be served by here reviewing the testimony at length. Suffice it to say that the evidence is wholly circumstantial, and, viewed in light most favorable to the prosecution, is not sufficient to do more than create a suspicion that the defendant is guilty of the crime charged. The defendant's ranch, where he lived, adjoined that owned and occupied by his brother Luca. When they first came to Montana in 1906, they took up adjoining homesteads and lived together for about two years, but later in 1914, because of differences and litigation between them, they became estranged and evidenced animosity toward each other until about 1924, when they became reconciled, since which time and up to the day of the explosion they were on friendly terms, visited back and forth, and helped one another. In fact, on the very afternoon of the day of the explosion, Luca had visited at his brother's house, and they appeared friendly. Luca is unmarried, and John has a wife and six children, all of whom live with him on his ranch except Mike, the oldest child, about twenty-eight or thirty years of age, who has been away from home about four years. Mrs. Cochran and two of her sons were living at the Luca Konon place. She was keeping house, and her boys helped with the work about the place. The eldest of these Cochran children is Tommy, sixteen years of age.

In the afternoon of August 20, 1927, about 5 o'clock, Luca Konon left his ranch, accompanied by Tommy Cochran, in a Ford automobile owned and driven by Luca Konon, en route to the town of Plevna, about 17½ miles distant. After completing their business at Plevna, they were returning home over a private road used by Luca Konon in going to his premises, and, when about a mile distant therefrom, at about 8 o'clock and very dark, they encountered the trap set

in the road, resulting in a terrific explosion, which greatly damaged the automobile driven by Luca Konon, but fortunately the occupants were uninjured, and they proceeded on their way afoot to the Luca Konon residence. Suspicion fell upon the defendant as the person responsible for the crime.

It appears that in 1914 John threatened Luca's life, and in 1916 Luca had John arrested for an assault upon the former's life, but the case was dismissed. Then John sued Luca for $10,000 damages for malicious prosecution, which case was tried and resulted in a verdict and judgment in Luca's favor. They also had other litigation. In connection with the parts used in making the infernal machine, there was found at the scene of the explosion the breach block of a .25-20 Winchester rifle, evidently used in causing the discharge of the dynamite, which was identified as having been traded to two of the defendant's sons in 1919 or 1920, and Luca Konon testified to having seen the gun at the defendant's place about a year previous. On Sunday morning, the day after the explosion, the sheriff, C. E. Burrell, undersheriff, W. B. Frankland, and county attorney, D. R. Young, visited the scene of the explosion, and also John Konon's premises. At the latter place they found two pieces of wood, one being identified by John Konon as a piece off his pump rod which had broken, and the other a piece of cherry stick. The piece of cherry wood was similar to a stick used in the arrangement of the infernal machine, and the piece of wood from the pump rod had evidently been a portion of one of the sticks used in making the infernal machine. John Konon, when shown these pieces of wood and that they fitted together, indicative of the fact that the piece used in the infernal machine had been cut from the piece found, turned pale and acted nervous. The county attorney fitted the pieces together, and said, as he exhibited them to the defendant, "You forgot something, didn't you John?" And "about that time John broke out in a general tirade against Luca. He called his brother vile names, and said that his daughter had seen the sheriff split the stick." The sheriff

testified: "John said about the sticks when they were shown to him, 'that is a piece of my pump rod.' He says, 'My girl saw the sheriff split it off with a spade; saw him pick it up and split it off at the shop.' He said it was a piece off of his pump rod. He said it had broke the other day and he had made a new one. He said he had taken it off a few days before. He made the statement about the girl saying that she saw the sheriff split it off after Mr. Frankland placed him under arrest and brought him down to the shop. He called the girl down there and he stated what he had said and she said 'yes' to it, that she did. He said the pump rod had been out there in front of the shop. * * * The stick of wood that had been picked out of the wood pile, he said was a part of a cherry tree that he had made a bracket for a bucksaw with, and he showed me the bucksaw he had repaired, and it had new brackets in it and braces. * * * The only indications of explosives around John's place when I made the investigation the first day, Sunday, was a piece of dynamite fuse; regular water proof fuse. I found it on the bench in the blacksmith shop there." However, such find was by him not considered unusual on a ranch in that community, as all of the farmers there used dynamite more or less in getting out their required coal supplies.

Newton Cochran testified that he had heard the explosion a distance of over five miles away, and that, as he passed the defendant's house about 9 o'clock the night of the explosion, he saw a light in the defendant's house, although the defendant and others of the family testified they had retired before 8 o'clock.

Conceding the truth of all such circumstantial evidence, it does not establish the defendant's guilt beyond a reasonable doubt, and therefore the judgment cannot be permitted to stand. In order to justify conviction, guilt must be established beyond a reasonable doubt. (Sec. 10672, subd. 5, Rev. Codes 1921.) A person charged with crime "is presumed to be innocent until the contrary is proved, and in case of a

reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal." (Id., sec. 11971.) And the law is settled in this jurisdiction that "a defendant may not be convicted on conjectures, however shrewd, on suspicions, however justified, on probabilities, however strong, but only upon evidence which establishes guilt beyond reasonable doubt, that is, upon proof such as to logically compel the conviction that the charge is true." (*State* v. *Mullins*, 55 Mont. 95, 173 Pac. 788; *State* v. *Riggs*, 56 Mont. 393, 185 Pac. 165; *State* v. *Riggs*, 61 Mont. 25, 201 Pac. 272.) The evidence of prior ill feeling between the parties was admissible in order to establish motive, but it has little criminatory value. For at least two years prior to the explosion the brothers had been on friendly terms, neighborly, and their past troubles apparently forgotten. As to all the other circumstances established by the evidence, they are not such as to point to the guilt of the accused to the exclusion of any other rational hypothesis. Conceding all of the facts proven, there has been established nothing more than a suspicion of the defendant's guilt of the crime. Others in the neighborhood may in fact have been the perpetrators of the deed. The mere fact that the pieces of wood found at the defendant's place of abode were of like character to materials used in assembling parts for the infernal machine, or, in fact, were taken therefrom, is merely a circumstance; so, too, as to the rifle breach block which had been seen on his ranch, the property of one of his sons, and as to the piece of dynamite fuse found in the blacksmith shop at his ranch. All taken together, the defendant's guilt is not established to the exclusion of other persons. Withal the crime may in truth and fact have been committed by some one other than the defendant.

The settled rule is that, in order to sustain a conviction on circumstantial evidence, all the circumstances proved must be consistent with each other, and with the hypothesis of the defendant's guilt, and at the same time inconsistent with any other rational hypothesis. (*State* v. *Suitor*, 43 Mont. 31, Ann.

Cas. 1912C, 230, 114 Pac. 112.) The evidence is wholly circumstantial, and, in our opinion, insufficient to sustain the verdict. It fails altogether to meet the requirements of the rule just stated. It must appear to a moral certainty that the crime was committed by the accused and no one else. (*State v. Chevigny*, 48 Mont. 382, 138 Pac. 257; *State v. Sieff*, 54 Mont. 165, 168 Pac. 524; *State v. Riggs*, supra.) And where, as here, there is no substantial evidence to support the judgment, it becomes our duty to set it aside. (*State v. McCarthy*, 36 Mont. 226, 92 Pac. 521.)

For the reasons stated, the judgment is reversed, and the cause remanded to the district court of Fallon county, with directions that the case be dismissed and the defendant discharged.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, FORD and ANGSTMAN concur.