No. 12706

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

BILL ROSCOE MERSEAL,

Defendant and Appellant.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable Edward T. Dussault, Judge presiding.

Counsel of Record:

For Appellant:

Daniel J. Shea argued, Missoula, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
John F. North, Assistant Attorney General, argued,
Helena, Montana
Robert L. Deschamps, County Attorney, argued,
Missoula, Montana

---

Submitted: June 23, 1975

Decided: AUG 8 1975

Filed: AUG 8 1975

Thomas J. Kearney
Clerk

Mr. Justice John C. Harrison delivered the Opinion of the Court.

Defendant Bill Roscoe Merseal appeals from a judgment rendered November 14, 1973, in Missoula County, finding him guilty of attempted second degree assault, a felony.

The chain of events leading to defendant's arrest began with a domestic disturbance. Missoula police department officers Meltzer and Doxtater were dispatched in response to a call from defendant's wife. She informed them defendant had assaulted her and then left in his car. She also told them an automatic weapon could be found on the floorboard of the car. Defendant was located and arrested later that evening and was informed the charge would be third degree assault.

At that point defendant was asked to drive to the county courthouse. Officer Meltzer accompanied defendant in his vehicle, while three other patrol cars, one in front and two in back, escorted them. No search of defendant's vehicle was conducted at the scene of the arrest.

The alleged second degree assault on Officer Meltzer apparently took place during this drive to the courthouse, while the vehicle was still in motion. Defendant and Officer Meltzer became involved in a heated argument, and several times during the discussion, defendant expressed a desire to get out of the car. The record is not clear as to whether defendant's purpose was to escape or merely to avoid further altercations with Officer Meltzer by riding in one of the other cars. There is testimony to support both propositions. The specific acts constituting the crime alleged were described by Officer Meltzer on direct examination:

"Q. Did anything unusual happen as you were pro-
ceeding down Orange Street? A. Yes, when we got
on the Orange Street Bridge, approximately dead
center Mr. Merseal had slowed his vehicle down to
approximately 5 miles per hour. We were about a

half block behind the lead police car and he again stated he was going to jump out. He reached for, grabbed the tilt ejector on the wheel and tilted it forward and <u>started for the door and approximately at the same time he reached down or lunged for the floorboard</u> with his right hand, driving with his left. I reached over with my left hand, grabbed his arm and drew my weapon and pointed it at him and said <u>if he came up with a gun</u> that I'd have to shoot <u>him."</u> (Emphasis added).

Defendant's version is substantially the same except he denied that he reached down or lunged for the floorboard. A search of the vehicle in the courthouse parking lot did in fact reveal the existence of a loaded .25 caliber weapon under the floormat on the driver's side. Defendant was then booked and jailed on the charge of third degree assault on his wife and released on bond.

Approximately five months later, the county attorney filed an Information which provided in pertinent part:

"The facts constituting the offense are: Said Defendant did wilfully, wrongfully, unlawfully, and feloniously attempt to assault a human being, to wit: G. Lee Meltzer, with a loaded .25 caliber automatic pistol, with the intent in him, the said Bill Roscoe Merseal to prevent or resist the lawful detention of himself, at approximately 2:00 A.M., on December 27, 1972, in a moving vehicle on or near the Orange Street Bridge, in Missoula, Montana."

Myriad specifications of error are presented but only one issue merits consideration in disposition of this appeal---is the evidence legally sufficient to support the verdict and judgment?

This Court remains evermindful of one fundamental rule--that questions of fact must be determined solely by the jury, and that given a certain legal minimum of evidence, this Court on review will not substitute its judgment for that of the jury. State v. Gunn, 89 Mont. 453, 300 P. 212; State v. Barick, 143 Mont. 273, 389 P.2d 170. The policy is firmly grounded on the recognition that, unlike an appellate court, the jury has, as stated in State v. Gustin, 85 Mont. 581, 584, 281 P. 351:

"* * * the advantage of seeing the witnesses
on the witness-stand, of observing their de-
meanor, their apparent candor or lack of it, of
examining the * * * exhibits offered in evidence.
* * *".

However, the rule has no application where the standard
of legal sufficiency has not been met. That standard, established
by a long line of decisions, is the rule of substantial evi-
dence. Where substantial evidence is found to support the
verdict, it must stand. State v. Fitzpatrick, 163 Mont. 220,
516 P.2d 605; State v. Hoskins, 163 Mont. 36, 514 P.2d 1331;
State v. Bouldin, 153 Mont. 276, 456 P.2d 830; State v. Olsen,
152 Mont. 1, 445 P.2d 926; State v. Peschon, 131 Mont. 330,
310 P.2d 591. But where there is no substantial evidence to
support the judgment, it becomes our duty to set it aside. State
v. Konon, 84 Mont. 255, 274 P. 1060; State v. McCarthy, 36 Mont.
226, 92 P. 521.

On appeal we examine the evidence to determine whether
the verdict is supported by substantial evidence. In so doing,
we view the evidence in the light most favorable to the State.
State v. Noble, 142 Mont. 284, 384 P.2d 504; State v. Steward,
151 Mont. 551, 445 P.2d 741. Substantial evidence means such
relevant evidence as a reasonable mind might accept as adequate
to support a conclusion. Hurley v. Northern Pacific Ry. Co.,
153 Mont. 199, 455 P.2d 321; Graham v. Rolandson, 150 Mont.270,
435 P.2d 263; 24A C.J.S. Criminal Law §1880, p. 793.

To obtain a conviction for attempted assault, the State
carries the burden to prove three elements beyond a reasonable
doubt: (1) The attempt or intentional and ineffectual overt
act, State v. Stone, 40 Mont. 88, 105 P. 89; (2) the present
apparent ability to do harm; and (3) a reasonable apprehension
or fear in the mind of the person assaulted. State v. Barry,
45 Mont. 598, 124 P. 775. Too, under section 94-602(5), R.C.M.
1947, the intent to prevent or resist lawful apprehension or
detention must be established.

The record is deficient in that it fails to provide any credible evidence in support of the conclusion that defendant's conduct placed Officer Meltzer in reasonable apprehension or fear. Since the question was never put to him directly, the jury decision could only have been based on inferences drawn from circumstantial testimony.

Officer Meltzer testified he believed defendant had a gun, although he never saw one. This is inconsistent with his testimony to the effect that _if_ defendant came up with a gun, he would have to shoot him. He was well aware of the possibility the gun was under the floormat, but he unhesitatingly entered defendant's car for the ride to the courthouse without first searching the vehicle. While defendant repeatedly argued with him and expressed an intent to leave the vehicle, the officer never found it necessary to place him under restraint and allowed him to continue to drive the car. Additional confusion surrounds his testimony concerning defendant's alleged "lunge" for the weapon, which seemed to take place at approximately the same time as defendant moved toward the door in an opposite direction.

While these circumstances might well have justified the officer in drawing his weapon or placing the defendant under physical restraint, they do not justify a conviction for attempted assault. The record simply lacks substantial credible evidence upon which a proper inference as to the officer's state of mind might have been drawn.

The facts here are of such a conjectural nature as to be insufficient to support the conviction.

Accordingly, judgment is reversed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.