No. 82-481

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

THOMAS VAN HAELE,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert H. Wilson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Wade J. Dahood argued, Anaconda, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Chris Tweeten argued, Asst. Attorney General, Helena
Harold F. Hanser, County Attorney, Billings, Montana

Submitted: September 12, 1983

Decided: December 12, 1983

Filed: DEC 12 1983

*Ethel M. Harrison*

Clerk

The Hon. Chan Ettien delivered the Opinion of the Court.

The defendant, Thomas Van Haele, appeals from his conviction of aggravated assault, a felony, in the District Court of the Thirteenth Judicial District, Yellowstone County. We affirm the conviction.

The incident leading to Van Haele's arrest and ultimate conviction occurred on the premises of Shur-gard Mini Storage, a rental warehouse business in Billings, Montana. At closing time on July 31, 1981, Van Haele, using the alias "Bill Hayes," appeared at the gate leading into the storage buildings and asked if he could have access to his cubicle for approximately five minutes. Robert Westfall, who managed the business with his wife, Mae, agreed to let Van Haele in, and in return, Van Haele gave him five dollars.

The Westfalls had earlier allowed another tenant and friend of theirs, Tim Bender, onto the premises and had given him permission to lock up when he left. Now that Van Haele was also on the premises, Mae Westfall went to find Bender and tell him not to lock the other tenant in. She found Bender and asked him if he had seen the other tenant. Bender replied "yes," and told her where Van Haele's cubicle was located. Then, wanting to tell Van Haele to hurry, she went to find his cubicle.

Mae Westfall testified that as she approached Van Haele's cubicle she noticed the padlock had been removed from the door but the door itself was shut. She knocked on the door and said, "hey you." There was no response, so she knocked on the door again and hollered, "hey you in there." Again there was no response and she opened the door. She then saw Van Haele "sitting on the floor with a gun in my

- 2 -

face." She got behind the door and Van Haele came out of the cubicle.

At this time, Bender, who had followed Mae Westfall to Van Haele's cubicle, asked to look at the gun to see if it was loaded. Van Haele replied, "you're damned right it's loaded" and Bender attempted to grab the gun. When he could not easily disarm Van Haele, Bender left and returned to his own cubicle. Mae Westfall had already fled the area.

Van Haele stopped by the office as he was leaving and attempted to speak to Mae Westfall but was told by Robert Westfall that she refused to see him.

On August 11, 1981, the county attorney's office filed charges against Van Haele for aggravated assault. He appeared before the court the same day and pled not guilty. Trial began on November 10, 1981, and the jury convicted Van Haele. He was sentenced to serve ten years in the Montana State Prison with five years suspended.

Van Haele presents the following issues on appeal:

1. Whether the evidence presented at trial is sufficient as a matter of law to warrant and sustain the verdict of guilty of aggravated assault.

2. Whether the District Court erred in refusing defendant's instruction explaining the defense of reasonable doubt and failure of the prosecution to establish the requisite proof.

3. Whether the sentence of ten years should be set aside and a new hearing on sentence be conducted since the trial court considered the conviction and fifteen year sentence of Thomas Van Haele for the crime of possession of dangerous drugs with intent to sell which arose out of the instant case and which was reversed by this Court on August

- 3 -

23, 1982 (See State v. Van Haele (Mont. 1980), 649 P.2d 1311, 39 St.Rep. 1586).

With regard to the first issue, Van Haele contends that the evidence fails as a matter of law to support the jury verdict of guilty on the charge of aggravated assault. More specifically, he contends that: 1) the evidence fails to show that Mae Westfall was placed in reasonable apprehension of serious bodily injury as a result of his actions; and 2) the evidence fails to show that he acted purposely or knowingly in causing that result.

Van Haele contends that Mae Westfall was not fearful or apprehensive when she opened the door and saw him with a gun because she immediately said, "what the hell are you doing with that gun?" In addition, he points out that she did not scream or cry for help.

As for his own actions, Van Haele contends that he was in his cubicle when the door was suddenly opened, surprising him. He contends that he did not knowingly or purposely point the gun at any person, but because of the height of the cubicle, only four feet, he was forced to be in a stooped position, and in exiting from a kneeling position, it may have appeared that he pointed the gun at Mae Westfall.

The State contends that the jury duly considered the conflicting evidence presented to them in relation to whether Mae Westfall was placed in reasonable apprehension and whether Van Haele acted purposely or knowingly, and that they weighed this evidence before reaching their verdict. Therefore, they contend that this Court should be reluctant to substitute its judgment for that of the jury.

It has been recognized by this Court as a fundamental rule of law that questions of fact must be determined solely

by the jury, and that given a certain legal minimum of evidence, this Court, on review, will not substitute its judgment for that of the jury. State v. Pendergrass (1978), 179 Mont. 106, 118, 586 P.2d 691, 697-8; State v. Merseal (1975), 167 Mont. 412, 415, 538 P.2d 1366, 1367-8, and cases cited therein.

The standard of legal sufficiency is whether the verdict is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." In reviewing the evidence to determine whether substantial evidence exists, this Court will view the evidence in the light most favorable to the State. Pendergrass, 179 Mont. at 118; Merseal, 167 Mont. at 415-6.

At trial, the State produced testimony that Mae Westfall opened the door to Van Haele's cubicle and found a loaded .38 pistol pointed at her face from a distance of one foot away. Mae Westfall testified that she was scared and that she felt terrible as she was looking at the gun, so terrible, in fact, that she couldn't even move.

Van Haele, on the other hand, never offered Mae Westfall an innocent explanation for his conduct when he had the chance to do so. When Mae Westfall asked him what he was doing with a gun, his only reply was, "who in the hell are you?" In addition, when Van Haele stopped at the office on his way out, Robert Westfall testified that Van Haele's attitude was not contrite, but rather was "belligerent."

Although Van Haele testified that he did not intentionally point the gun at Westfall, and that he had no intention to frighten her, the jury was free to consider all evidence presented and to pick and choose which of the

witnesses it wished to believe. State v. Swazio (1977), 173 Mont. 440, 445, 568 P.2d 124, 127, citing State v. Fitzpatrick (1973), 163 Mont. 220, 226, 516 P.2d 605, 609. The jury may also use circumstantial evidence to determine the existence of a particular mental state. That is, they may infer the mental state from what the defendant does and says and from all the facts and circumstances involved. State v. Pierce (Mont. 1982), 647 P.2d 847, 850-51, 39 St.Rep. 1205, 1209. Based on the foregoing principles, we find that the record contains substantial evidence to support the jury's finding that Van Haele purposely or knowingly caused Mae Westfall reasonable apprehension of serious bodily injury.

In conjunction with this issue, Van Haele contends that even if this Court should find substantial evidence to support the jury's verdict, the conviction is still improper as a matter of law. Van Haele argues that under section 45-3-104, MCA, he had a right to use force to defend his property. However, a scrutiny of the record reveals that the issue of justification was never raised at the trial level.

It is a well settled rule that on appeal, this Court will consider for review only those questions raised in the trial court. State v. Campbell (Mont. 1981), 622 P.2d 200, 38 St.Rep. 19; State v. Armstrong (1977), 172 Mont. 552, 562 P.2d 1129. As the issue was not raised in the trial court, we will not consider it further on appeal.

As his next issue, Van Haele contends that his proposed instruction no. 7 explaining reasonable doubt and the prosecution's burden of proof should have been given to the jury. Van Haele contends that the instruction was necessary

in order for the jury to understand his defense based on the failure of the prosecution to establish the requisite proof.

The State contends that the instruction was properly refused by the trial court in that: 1) the last sentence of the instruction told the jury "unless you find beyond a reasonable doubt that the defendant is not guilty of the offense charged, your verdict should be 'not guilty;'" which is an incorrect statement of law, and; 2) the substance of the refused instruction was covered by other instructions given by the court, so that the defendant's ability to argue his theory to the jury was not impaired. (Emphasis added.)

This Court has consistently held that the District Court need not give repetitious instructions nor instruct on every nuance of a theory of defense. State v. Graves (Mont. 1981), 622 P.2d 203, 210, 38 St.Rep. 9, 16, and cases cited therein. The court gave nine instructions discussing burden of proof and presumption of innocence, including instructions that the State was required to prove every element of the charge; that the prosecution bore the burden of proof; that the defendant is presumed innocent; and that in case of reasonable doubt the defendant is entitled to an acquittal. The important elements of the refused instruction were contained in the other instructions given by the District Court, therefore it was not error for the District Court to refuse Van Haele's proposed instruction no. 7 or a corrected version of the instruction.

Finally, Van Haele contends that the District Court erred in considering a drug charge on which he had been convicted, but was later reversed by this Court in State v. Van Haele (Mont. 1982), 649 P.2d 1311, 39 St.Rep. 1586. Van Haele cites State v. Olsen (Mont. 1980), 614 P.2d 1061, 37

- 7 -

St.Rep. 1313, where this Court held that a defendant is entitled to have his sentence predicated on substantially correct information, and where improper matters are considered by the sentencing court, a defendant has a right to be resentenced. However, this Court has also recognized that if it is obvious from the record that the judge did not rely on the infirm conviction and the sentence would not have been different had the judge disregarded the prior conviction, this Court will find no prejudice to the defendant. Fitzpatrick v. State (Mont. 1981), 638 P.2d 1002, 1015, 38 St.Rep. 1448, 1462.

At sentencing, the District Court stated:

> "So far as the charge of which you were found guilty in this Court, you have been sentenced on that drug charge and I think that sentence must stand on its own in that particular case."

The court made no further reference to the drug case.

The judgment reflects that the court based its sentence on the facts set forth in the presentence report, the defendant's past history, and his chemical dependency, not the drug conviction. Therefore, we find no prejudice to Van Haele and his sentence is upheld.

The judgment and sentence are affirmed.

_____
Hon. Chan Ettien,
District Judge, Sitting
for Mr. Justice Frank B.
Morrison, Jr.

- 8 -

We Concur:

_Frank I. Haswell_
Chief Justice

_Daniel J. Shea_

_____

_L. C. Gulbrandson_

_John Conway Harrison_
Justices

Mr. Justice John C. Sheehy dissents and will file a written dissent later.

IN THE SUPREME COURT OF THE STATE OF MONTANA

82-481

THE STATE OF MONTANA,

    Plaintiff/Respondent,

        vs.

THOMAS VAN HAELE,

    Defendant/Appellant.

DISSENT OF MR. JUSTICE JOHN C. SHEEHY

Opinion filed:  December 12, 1983

Dissent filed:  January 11, 1984

FILED

JAN 11 1984.

Ethel M. Harrison

CLERK OF SUPREME COURT
STATE OF MONTANA

Justice John C. Sheehy dissenting:

On January 26, 1981, Thomas Van Haele, under the name of Bill Hayes, entered into a written rental agreement with Shurgard Mini Storage, at 5504 King Ave. East, near Billings, Montana. The subject of the rental was a storage unit in one of the buildings of Shurgard. The unit itself was small in dimensions, 5 feet by 5 feet in floor area and about 4 feet in height. Such cubicles are used for the storage of personal property.

The rights of Shurgard (landlord) and Van Haele (tenant) are defined by the written rental agreement. It is agreed in the instrument that Shurgard is not engaged in storing goods or operating a warehouse, but is "simply a landlord renting a storage unit in which tenants can store items of personal property owned by tenants." It is further provided that "landlord will not maintain supervision or control over the storage unit rented herein, but said unit is under the exclusive control of tenant and tenant must take whatever steps are necessary to safeguard whatever property is stored in the unit." It is the duty of the tenant to buy a lock if he wishes to maintain a locked unit. The landlord has a right to inspect the unit but even that is fenced around: "Tenant will allow landlord free access at all reasonable times to the unit for the purpose of inspection, making repairs, additions or alterations to the unit that may be required under the landlord's obligations contained" in the instrument.

The written agreement contains no provisions that fix or limit the times at which the tenant can come to the storage unit for whatever purposes he may have.

It is obvious that Shurgard and Van Haele entered into a contract of hiring. This is a contract by which one gives to another the temporary possession and use of property, other than money, for reward, and the tenant agrees to return the same to the landlord at a future time. Section 70-1-601, MCA. In such contracts, as a matter of statute, the landlord binds himself "to secure to the hirer the quite possession of the thing hired." Section 70-1-602, MCA.

Mae Frances Westfall, and her husband Robert F. Westfall apparently were hired as caretakers by Shurgard for the rental unit premises. As a representative of the landlord, Mrs. Westfall's only right to enter the cubicle rented to Van Haele was for the reasons listed in the agreement, for the purpose of inspection, or to make alterations or repairs. She had no right to enter for any other purpose. She therefore had the status of an interloper when she opened the door of the cubicle, while Van Haele was inside, to find him crouching inside with a gun in his hand. He had to crouch; the height of the cubicle would not permit standing up.

Tim Bender was present when the Mae Westfall came to Van Haele's cubicle. Each of them testified that the she knocked on the door 2 or 3 times, that there was no answer and that she thereupon opened the door which was unlocked. When she opened the door, the defendant was inside holding a handgun and it was pointed at Mrs. Westfall. Bender claimed he waved it at him also. When Van Haele came out of the cubicle, Bender grabbed the arm that held the gun and tried to wrestle the gun away from Van Haele, but he was unable to do so. So Bender let go of Van Haele's arm and went back to his own bin. Van Haele thereupon left the building.

Upon opening the door, Mae Westfall immediately said to Van Haele, "What in hell are you doing with that gun?" He responded, "Who in hell are you?"

The only testimony as to any effect upon Mae Westfall was that she was "scared." She left the premises immediately.

It is upon this evidence that the defendant has been convicted of felonious aggravated assault.

Under section 45-5-202, the defendant is guilty of aggravated assault only if he purposely or knowingly caused reasonable apprehension of serious bodily injury in Mae Westfall by use of a weapon. Van Haele would be justified in the use of threat of force against her to the extent that he reasonably believed that such was necessary to prevent or terminate her unlawful entry into his occupied structure, section 45-3-103, MCA.

In my opinion, the evidence fails completely to establish an offense of aggravated assault. Van Haele could only have acted purposely if it was his conscious object to raise reasonable apprehension of serious bodily injury in Mae Westfall by use of the weapon. Section 45-2-101(15), MCA. He could act "knowingly" with respect to aggravated assault if he was aware that his conduct would raise in her a reasonable apprehension of serious bodily injury. The proof is totally lacking in these two aspects.

It is further lacking in any testimony that Mae Westfall was in fear of serious bodily injury. She did not so testify.

It would be improper to convict Van Haele simply because he was standing or crouching in his cubicle, while holding a gun. He has a constitutional right to keep or bear arms in

- 12 -

defense of his own home, person and property, which right may not be called into question, Article II, section 12, (1972) Mont. Constitution.

In my opinion, this incident was ballooned all out of proportion and the sentence imposed is harsh in the extreme.

_____
Justice