STATE, RESPONDENT, *v.* JACKSON, APPELLANT.

(No. 5,458.)

(Submitted September 9, 1924. Decided October 24, 1924.)

[230 Pac. 370.]

*Criminal Law—Homicide—Robbery—Murder in First Degree —Instructions—Witnesses—Impeachment—Appeal — Briefs.*

Appeal—Briefs—Errors not Argued Deemed Abandoned.
   1.   Assignments of error not argued in appellant's brief will be deemed abandoned.
Homicide Committed During Pursuit After Perpetration of Robbery—Murder in First Degree.
   2.   Where defendant, after robbing a bank, escaped in an automobile with the money, pursuit being at once begun and continued uninterruptedly for about thirty miles and shot one of the pursurers, an

[71 Mont. 421.]

instruction that if the jury believed that defendant committed the crime of robbery and while escaping killed deceased, he was guilty of murder in the first degree, was proper under section 10955, Revised Codes of 1921, the robbery at the time of the shooting having then still been in the process of commission.

Same—Lying in Wait—Murder in First Degree—Proper Instruction.
    3.   Where defendant had robbed a bank and in the course of his escape drove his automobile into a coulee, stopped his machine and when deceased, one of the pursuers, appeared on the top of a hill, shot him, an instruction that homicide committed by lying in wait constitutes murder in the first degree was correct.

Same—Witnesses—Reputation—Improper Exclusion of Testimony.
    4.   A witness for defendant gave evidence tending to establish an alibi. The state in rebuttal called witnesses who testified that the reputation of the alibi witness was bad. On surrebuttal defendant sought to introduce testimony that the general reputation of his witness was good; the court declined to hear it. *Held,* reversible error, the law not permitting a witness to be impeached without giving the party who produces him an opportunity to rebut the impeaching testimony.

Same—Duty of Person to Communicate Knowledge of Commission of Crime to Officer—Erroneous Instruction.
    5.   The provision of section 11729, Revised Codes of 1921, that a person who has reason to believe that a crime has been committed and that a certain person has committed it, must make complaint before a magistrate, does not require one to disclose to a county attorney evidence within his knowledge tending to disprove the defendant's guilt, and an instruction that it does was erroneous.

Same—Alibi Witness—Failure of Witness to Communicate His Knowledge to County Attorney—Evidence—Admissibility.
    6.   It was error to permit answers to questions asked a witness for the defendant, with the purpose of discrediting him, whether he had imparted his knowledge as to the whereabouts of defendant at the time the crime was committed to the sheriff's office or the county attorney.

Appeal—Briefs—Assignments of Error—Presentation in Argument.
    7.   Where a number of assignments of error are presented for review, the various assignments should be identified in that portion of the brief devoted to the argument by proper subheads referring to the particular assignment treated thereunder.

*Appeal from District Court, Fergus County; Rudolf Von Tobel, Judge.*

NEWTON L. JACKSON was convicted of murder in the first degree and appeals. Reversed and remanded for a new trial.

*Mr. Stewart M. McConochie* and *Mr. J. H. Duffy,* for Appellant, submitted a brief; *Mr. McConochie* argued the cause orally.

The court erred in giving Instruction No. 16, for the reason that the alleged shooting of Allison L. McCain was not done

or committed in the perpetration or attempt to perpetrate rob-
bery, and if a robbery had been committed, the act of robbery
was completed and ended as shown by the evidence long before
the time that the shot was fired. The alleged shooting took
place at a distance of about thirty-five miles from the place of
the alleged robbery, and about an hour and a half thereafter,
and therefore could not be and was no part of the alleged
robbery. (*People* v. *Huther,* 184 N. Y. 237, 77 N. E. 6;
*Dolan* v. *People,* 64 N. Y. 485; *Griffin* v. *Western Mutual Ben.
Assn.,* 20 Neb. 620, 57 Am. St. Rep. 847, 31 N. W. 124; *People*
v. *Wardrip,* 141 Cal. 229, 74 Pac. 744; *Pleimling* v. *State,*
46 Wis. 516, 1 N. W. 278; *Hoffman* v. *State,* 88 Wis. 166, 59
N. W. 588–592.)

Error was committed in the giving of the following instruc-
tion: "30. You are instructed that when a crime has been
committed, it is the duty of a citizen having knowledge of
any fact or facts relative to the commission of such crime to
impart such information to the prosecuting officers of the .
county in which said crime was committed." Under the pro-
visions of the Codes there is only one provision made as to
and defining the duty of a citizen and that is found in section
11729. Counsel for the state asked of every witness who was
called to testify on behalf of the defendant questions in sub-
stance as follows: "You had all this information and knew
that the officers were trying to secure all the information they
could in connection with the alleged robbery, and yet you
never told a person about the information you had." It is
very evident that these questions were put to the witnesses
on behalf of the defendant for the purpose of discrediting
them and creating a prejudice in the minds of the jury against
the witnesses and their testimony. This certainly was error,
as the information which the witnesses possessed was not that
any person had committed an offense but that the person con-
cerning whom they testified had not committed a public offense
as referred to in the above-mentioned section 11729, and
therefore there was no legal duty on their part under this

section and under the testimony to make any complaint or give any information to anyone.

The only other provision which in any way sets forth the duty or liability of any person is found in section 10733, which is as follows: "All persons who have full knowledge that a felony has been committed, conceal it from the magistrate or harbor or protect the person charged with or convicted thereof, are accessories." The supreme court of California, in interpreting that section of the California Codes with reference to accessories which contain the exact words of the section last above referred to said: "At the same time the word 'conceal' as here used means more than a simple withholding of knowledge possessed by a party that a felony has been committed. This concealment necessarily includes the element of some affirmative act, upon the part of the person tending to or looking towards the concealment of the commission of the felony. Mere silence after knowledge of its commission is not sufficient to constitute the party an accessory." (*People* v. *Garnett*, 129 Cal. 364, 61 Pac. 1114.)

Whenever the character of a witness introduced in behalf of a defendant in a criminal action has been attacked and an attempt made to impeach it by showing the general reputation of the witness in the community where he has lived for truth and veracity, the defendant, as a matter of right, is entitled to introduce evidence on his trial for the purpose of showing that the general reputation of the witness attacked for truth and veracity in the community where he has lived is good. If the rule were otherwise, the state, in rebuttal for the first time, could introduce witnesses for the purpose of impeaching a witness who testified in behalf of the defendant, and the defendant would be bound by the testimony so introduced and denied the opportunity of proving the reputation of the witness attacked for truth and veracity to be good. (See 5 Jones' Commentaries on Evidence, 277; *In re Williams' Estate*, 52 Mont. 192, Ann. Cas. 1917E, 126, 156 Pac. 1087, and sec. 10,670, Revised Codes.)

*Mr. Wellington D. Rankin,* Attorney General, *Mr. L. A. Foot,* Assistant Attorney General, and *Mr. Edgar J. Baker,* County Attorney of Fergus County, submitted a brief; *Mr.* Foot argued the cause orally.

Citing in opposition to the first point made by appellant: *State* v. *Daniels,* 119 Wash. 557, 205 Pac. 1054; *State* v. *Habig,* 106 Ohio, 151, 140 N. E. 195; *Francis* v. *State,* 104 Neb. 5, 175 N. W. 675; *Commonwealth* v. *Lessner,* 274 Pa. 108, 118 Atl. 24.

Appellant next complains of Instruction No. 30. It cannot be denied that, as a matter of good citizenship, it is the duty of a citizen, having knowledge of any fact or facts relative to the commission of a crime, whether such facts are in favor of or against the person charged with the crime, to make them known, even if the statutes do not place such burden upon them. If there was any error in giving the instruction, it was harmless and did not prejudice the appellant in any manner, and the court will not reverse a case because of a harmless error. (*State* v. *Rhys,* 40 Mont. 131, 105 Pac. 494; *State* v. *Byrd,* 41 Mont. 585, 111 Pac. 407.)

Appellant offered the testimony of the witness, Ethel S. W. Abbott, to sustain the reputation for truth and veracity of the appellant's witness, Frank Maybell, whose reputation had been impeached by the state. This testimony was objected to as not surrebuttal, because the reputation of a witness is presumed to be good, and, when attacked, cannot thereafter be brought in issue by other evidence of his good reputation, but is an inquiry into a collateral matter; and on the ground that such testimony is irrelevant and immaterial and does not tend in any manner to prove any issues in the case on trial. No effort was made, except through cross-examination, to offset this testimony. Therefore, the testimony relative to his reputation became of little moment, and certainly could not have had so damaging an effect before the jury as that last referred to. It is obvious that, if the testimony of Maybell was im-

peached to the extent that the jury disregarded it, it was not because of the testimony concerning his reputation, but because of the testimony relative to his admissions of what amounted to perjury. Prejudice will not be presumed, and, where the record shows that the testimony excluded by the trial court is overshadowed by stronger and more damaging testimony than is competent, a reversal should not be ordered because of the technical error.

MR. JUSTICE GALEN delivered the opinion of the court.

By information the appellant, Newton L. Jackson, and one Charles Jarrett were jointly charged in the district court of Fergus county with the murder of Allison McKain on June 13, 1922. Demand for separate trials of the accused was made and granted. Upon plea of not guilty, the appellant was tried before a jury, which rendered verdict finding him guilty of the crime of murder in the first degree, and fixing his punishment at imprisonment for life in the state's prison. Judgment was pronounced in accordance with the verdict, and, a new trial having been denied, appeal is taken from the judgment and from the order denying a new trial.

A brief statement of the facts will suffice for present purposes. On June 13, 1922, at about the hour of 3:50 P. M., the First National Bank of Roy was robbed by two men, who carried away with them $1,300.96 of the bank's money, in specie and currency. Frank B. Stevens, the cashier, and the only person in the bank at the time in addition to the bandits, was by them locked in the bank vault, and thereupon the outlaws fled with the money in an automobile which awaited them at the rear of the bank building. Almost immediately after the flight commenced, Stevens was released from his imprisonment, raised the hue and cry, and about thirty minutes after the robbery gave rapid chase by automobile, accompanied by Allison McKain, William Olson and Grover Beale. The chase continued without intermission until the outlaws were overtaken near the hour of 5:30 P. M., at a point about thirty miles from

the town of Roy. Here the car driven by the bandits disappeared over the brow of a hill about fifty yards ahead of their pursuers and stopped in the bottom of a coulee at the foot of the hill. Thereupon a man appeared at the rear of the automobile pursued, rifle in hand, and aiming his piece at the pursuers, deliberately fired a shot which struck Allison McKain. Suffering from the wound thus inflicted McKain lingered and thereafter died at Lewistown, August 3, 1922.

Evidence was introduced by the state tending to show that the bank at Roy was robbed in furtherance of a conspiracy entered into by the appellant and his codefendant, Charles Jarrett, and that the shot discharged and resulting in the death of Allison McKain was fired by the appellant at a time 'when the cashier of the bank and his companions, *in posse,* were striving to prevent the bank's money from being carried away by the bandits. In defense, the appellant denies responsibility for the homicide. Additionally, he contends, that, if the proof be sufficient to establish his guilt, then it is wholly inadequate to establish the state's theory respecting the degree of murder; *i. e.,* that the homicide was perpetrated in connection with the commission of, or the attempt to commit, the crime of robbery, constituting first degree murder.

The trial of the case in the district court consumed more than one month, and in consequence the record is very voluminous, comprising fourteen large volumes. The appellant has assigned as grounds for reversal 367 alleged errors. We will [1] not consider these separately, as only twelve of them have been briefed and argued to this court. It must be assumed that counsel for appellant have abandoned 355 of the alleged errors assigned, and now place reliance wholly upon the specifications of error by them argued. Of these, in our opinion, but three present questions, the solution of which is required in disposing of this appeal. They will be stated and determined in their order.

1. Was it error for the court to give instruction No. 16, speci- [2] fied as error in an assignment numbered 352? The in-

struction is as follows: "You are instructed that if you find from the evidence in the case, beyond a reasonable doubt, that the said Newton L. Jackson, associated with some other person, committed the robbery herein referred to, and, while escaping with the proceeds of said robbery upon being pursued, lay in wait, and, upon the pursuers' approaching them, the said Jackson fired upon the pursuing party and inflicted upon Allison L. McKain a wound from which he subsequently died on the third day of August, 1922, then you are instructed that the crime of which the said Newton L. Jackson would be guilty in such event is murder of the first degree."

For the defendant it is argued that the instruction has no basis in fact, in that the shooting was not done nor committed in perpetration of, or attempt to perpetrate, robbery; and conceding that a robbery had been committed, that crime was fully accomplished before the time the shot was fired inflicting mortal wound upon Allison McKain. It is emphasized that the shooting took place at a point about thirty miles from the First National Bank of Roy and about one and a half hours after the money had been taken therefrom by the bandits. The state's theory is that the crime of robbery was not complete while the bandits were being pursued, and that, since the shot was fired during pursuit, the resulting homicide occurred while the bandits were still engaged in perpetrating the crime of robbery.

The statute defining degrees of murder, section 10955 of the Revised Codes of Montana of 1921, reads: "All murder which is perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, or mayhem, or perpetrated from a deliberate and premeditated design, unlawfully and maliciously, to effect the death of any human being other than him who is killed, is murder of the first degree; and all other kinds of murder are of the second degree."

[71 Mont. 421.]

Counsel for the state, as well as for the appellant, agree that the instruction was given on the theory that the shooting was committed "in the perpetration or attempt to perpetrate * * * robbery." Robbery is defined as "The felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Sec. 10973, Rev. Codes 1921.) Based upon the evidence introduced at the trial and the theory of counsel, the instruction was clearly warranted. For illustration, it would not be doubted that the shooting occurred in the perpetration of the crime of robbery if McKain had been in the bank with Stevens at the time the bandits entered, and was then and there shot by one of them as Stevens reached to recover the money taken. The fact that the shooting actually took place thirty miles from the bank, one and a half hours after the money was seized, does not indicate as a matter of law that the perpetration of the crime of robbery was entirely concluded. When the facts are examined, it is apparent that from the moment the bandits left the bank, Stevens and his companions were in hot pursuit, disputing the right of the bandits to the money, and endeavoring. to recapture it, while on the other hand the outlaws were endeavoring to escape the imminent presence of Stevens and his associates, and at all times striving to carry away the money which they had taken. Indeed, action was unbroken and continuous from the moment Stevens received the command to "stick 'em up" until McKain fell, mortally wounded; and so immediate and vigorous was the pursuit that it cannot be reasonably asserted that the bandits escaped the presence of Stevens and his party before the fatal shot was fired. That presence threatened the bandits until pursuit was abandoned after McKain was wounded.

Counsel argue that, under our statute, the crime is complete when there has been a violent and forcible taking, though the asportation of the goods may be ever so slight. It is true that our statute (sec. 10973, *supra*) defines robbery as "the feloni-

ous taking of personal property in the possession of another, from his person or immediate presence," *etc.*, and that asportation is not, in so many words, included in the offense. But the word "taking" included both seizure and movement, hence "It is quite clear that the crime of robbery is not complete without some carrying away, and the only question which can arise in this connection relates to the distance the goods must be carried, and the circumstances under which they are carried, in order to segregate the continued asportation from the crime itself. Though the crime of robbery is complete with only a slight asportation, yet, if the carrying away is in fact a long distance, the crime is still in process of commission if pursuit of the robber is immediately begun and continued without interruption until the flight has carried the perpetrator to a place of seeming security, or until uninterrupted pursuit is no longer continuously active. The mere fact of delay in beginning the pursuit until an alarm can be sounded and pursuit organized and instituted does not necessarily segregate the flight and prevent it being part and parcel of the crime." (*State* v. *Habig,* 106 Ohio St. 151, 140 N. E. 195.)

From 1 McClain on Criminal Law, page 327, we quote: "The killing is committed in the perpetration or attempting to perpetrate one of the named felonies if it occurs at any time while the perpetrator is engaged in any acts immediately connected with such felony, even though the felony may have been already completed."

In the case at bar, while the crime of robbery had sufficiently progressed to support a conviction against Jackson for that crime, he was nevertheless still engaged in his felonious purpose, that of carrying away the proceeds of his crime, and there had been no division of the spoils; neither had the conspirators reached a place of seeming security, nor had their continuous flight come to an end. The alarm was so quickly sounded, the pursuit so immediately begun, and so continuously pursued to the point where the homicide was committed that the conclusion must be reached that the homicide was

committed by Jackson while perpetrating the robbery, and as a part of the *res gestae.*

It cannot be said, therefore, as a matter of law, that the crime of robbery was complete at the time of the wounding of McKain, and it was entirely proper to submit the question for determination by the jury from all the facts proven. The cases of *Conrad* v. *State,* 75 Ohio St. 52, 8 Ann. Cas. 966, 6 L. R. A. (n. s.) 1154, 78 N. E. 957, and *State* v. *Habig, supra,* and in effect *Francis* v. *State,* 104 Neb. 5, 175 N. W. 675, support the above reasoning on facts exhibiting less continuity of action than are here presented.

*People* v. *Huter,* 184 N. Y. 237, 77 N. E. 6, *Dolan* v. *People,* 64 N. Y. 485, *People* v. *Wardrip,* 141 Cal. 229, 74 Pac. 744, cited and relied upon by the defendant, deal with murders perpetrated in connection with burglaries, and in each instance the shooting occurred, not while the bandit was in the act of breaking and entering, but after he had abandoned that course, or had effected a breaking and entering and was in flight. In other words, in those cases it can be argued that the felon's original course of action and intent had ceased when the killing occurred, though the reasoning in *Conrad* v. *State, supra,* seems to us more persuasive. Here actions and intentions were in process of fulfillment. The decision in *Griffin* v. *Western Mutual Benefit Assn.,* 20 Neb. 620, 57 Am. Rep. 848, 31 N. W. 124, rests on a refinement of analysis which we are unable to appreciate. It itemizes and separates the incidental movements in an unbroken action in much the same manner as slow motion pictures make fiction of fact. No authority is cited, and the facts stated in that opinion do not justify the conclusion there reached. There is nothing in *Pleiming* v. *State,* 46 Wis. 516, 1 N. W. 278, nor *Hoffman* v. *State,* 88 Wis. 166, 59 N. W. 588, inconsistent with the views here expressed.

While, as noted above, counsel have assumed that instruction [3] No. 16 was formulated on the theory that the murder was committed in the perpetration of robbery, yet careful study of the language employed indicates that the trial court

in giving the instruction proceeded on the theory that the alleged murder was perpetrated by the accused while "lying in wait." The evidence furnishes ample foundation for this theory, and it goes unchallenged.

2. Was it error for the court to exclude the offered testi-[4] mony of Ethel Abbott, which we find assigned as error in specifications 301 and 302?

Frank Maybelle, a witness offered by the defense, gave testimony to establish an alibi. During the state's rebuttal witnesses were called who testified that the general reputation of Frank Maybelle for truth and veracity in the community where he lived was bad. Conspicuous among and typical of these witnesses was A. W. Ogg. Attack was thus made by the state upon the general reputation of the witness Maybelle in order to discredit his testimony, and thereafter at the earliest opportunity, the defendant attempted to show by the witness Ethel Abbott, on surrebuttal, that the general reputation of the witness Maybelle was good. We are at a loss to understand the court's ruling forbidding the reception of such evidence. In our opinion error was thus committed requiring a new trial.

The attorney general argues that the effect of the ruling, even though it be erroneous, was minimized because other witnesses gave testimony tending to impeach the witness Frank Maybelle. And he argues that such other testimony was sufficient to persuade the jury to place no credence upon Maybelle's evidence. This all may be true, but thereby we are brought into a field of conjecture and speculation. It is just as legitimate to guess that the other testimony had no effect on the minds of the jurors, and that, if they rejected Maybelle's statements at all, it was because of the highly damaging testimony respecting his general reputation in the community wherein he lived. A witness is presumed to speak the truth. This presumption, however, may be repelled, among other things, by evidence affecting his character for truth, honesty or integrity, the jury being made the exclusive judges of

his credibility (sec. 10508, Rev. Codes 1921), and a witness may be impeached by the party against whom he was called, by evidence that his general reputation for truth, honesty and integrity is bad. (*Id.,* sec. 10668.) Evidence as to the character of a witness in any action is admissible only after his character has been impeached. (*Id.,* sec. 10670.) This presumption of truth accompanied Maybelle's testimony until diminished or repelled, if either, by the statements of the witness Ogg and others, but the law does not allow this result to be reached without giving the party who offers the witness opportunity to overthrow or rebut such impeaching testimony. It should be noted that no question arises here as to the impeachment of an impeaching witness. The offer of testimony through the witness Abbott was not as to the reputation of the impeaching witness Ogg, but as to the reputation of the witness Frank Maybelle. Sections 10508, 10668 and 10670, Revised Codes of 1921, permit the use of reputation as hearsay testimony indicative of one's character or moral constitution. (See, also, Wigmore on Evidence, 2d ed., 1609.) Of course there must be a limit to such collateral inquiry, for in most instances testimony for and against the reputation of a witness for truth and veracity could be recruited *ad infinitum.* Here, however, the defendant was prevented from offering any testimony against the attack which had been made on the reputation of the witness Maybelle. This was the denial to the defendant of a substantial right on the very threshold of the inquiry with reference to the reputation of Maybelle, a witness giving material testimony of great importance to the defendant, and constituted reversible error. (Sec. 10670, Rev. Codes 1921; *In re Williams' Estate,* 52 Mont. 192, Ann. Cas. 1917E, 126, 156 Pac. 1087; Jones' Commentaries on Evidence, sec. 865.)

3. Did the court err in giving instruction No. 30, urged as **[5, 6]** error in specification No. 362? The instruction is: "You are instructed that, when a crime has been committed, it is the duty of a citizen having knowledge of any fact or

facts relative to the commission of such crime to impart such information to the prosecuting officers of the county in which said crime was committed.''

Section 11729, Revised Codes of 1921, provides as follows: ''Every person who has reason to believe that a public offense has been committed and that a certain person has committed such offense, must make complaint of such person before a magistrate of the township in which the offense was committed, or if there is no magistrate in such township, before the nearest magistrate.''

The instruction above quoted may state a good social principle, but it is not warranted by the statute or the evidence in this case. It was based, apparently, on testimony offered by counsel for the state, who asked of witnesses offered to establish the defense of an alibi on part of defendant questions substantially as follows: ''Did you tell *anyone* that you had this information * * * '' or, ''You know that the sheriff and I were at Winnett looking up evidence in connection with this case. Why didn't you tell me [meaning the county attorney] or Sheriff Woods, what you know about this case?'' It is plain that these questions were put to the witnesses for the purpose of discrediting them as unworthy of belief, because of conduct unbecoming good citizens. The statute (sec. 11729, *supra*), defines the obligation of citizens who have reason to believe that a public offense has been committed, and that a certain person is guilty, to make complaint before a magistrate; however, there is no duty placed on him to communicate to a magistrate or other persons evidence within his knowledge tending to disprove the guilt of a person under investigation. The failure of the witness to disclose such evidence does not permit of his being subjected to such discrediting examination. The court was in error in admitting such testimony over objection, and the instruction given was erroneous.

In passing we note that the assignments of error are not [7] specified in appellant's brief and argument, and in con-

sequence it has been necessary for the court to identify various subheads of the argument contained in the appellant's brief, with the particular specifications of error assigned. We should not be required in the decision of cases to undertake this character of labor.

The judgment and order are reversed, and the cause is remanded to the district court of Fergus county for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY and STARK concur.

MR. JUSTICE RANKIN, being disqualified, takes no part in the foregoing decision.