IN RE PETITION OF DONALD DIXSON.

No. 11328.
Submitted April 28, 1967. Decided May 10, 1967.
430 P.2d 642.

Donald Dixson, pro se.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Donald G. Dixson, an inmate of the Montana State Prison,

appearing pro se, has filed with this court a petition for a writ of habeas corpus.

Petitioner makes two contentions, first that the information under which he was charged was duplicitous, vague, unclear and fatally defective upon its face and by reason thereof he could not understand the nature and cause of the accusation against him. Secondly, that the Uniform Act for Out-of-State Parolee Supervision, sections 94-7901 and 94-7902, R.C.M.1947, insofar as sub-sections (3) and (4) of said section 94-7901 are concerned, is repugnant to the United States Constitution because they deny citizens, and petitioner specifically, due process of law and equal protection thereof, including access to the courts both state and federal, deny the right to legal counsel and abridge and deny the privileges and immunities of the citizens of the several states.

As to the first contention, petitioner alleges that the information charged him with two separate and distinct crimes, robbery and premeditated murder, and that under the law then in force a criminal information could not embrace more than one offense.

By reference to the copy of the information annexed to his petition it appears that it charged the defendant with the crime of first degree murder, in that on or about June 10, 1953, the defendant committed the crime of murder in the perpetration of robbery, reciting the commission of the robbery and that in the perpetration of the robbery the defendant wilfully, unlawfully, feloniously, maliciously, deliberately, premeditatedly and with malice aforethought killed and murdered the deceased.

This information alleged but one crime, that of murder in the first degree as defined by section 94-2503, R.C.M.1947 which reads: "All murder which is perpetrated by means of poison, or lying in wait, torture, or by any other kind of willufl, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, or mayhem, or perpetrated from a deliberate and

premeditated design, unlawfully and maliciously, to effect the death of any human being other than him who is killed, is murder of the first degree; and all other kinds of murder are of the second degree."

This section has been interpreted by this Court in State v. Reagin, 64 Mont. 481, 210 P. 86; State v. Bolton, 65 Mont. 74, 212 P. 504; and State v. Jackson, 71 Mont. 421, 230 P. 370.

There is no merit to this contention of petitioner.

As to petitioner's second contention it appears from his petition that he was paroled on or about December 20, 1963, under the provisions of the Uniform Act for Out-of-State Parolee Supervision, he being required to live and work in Port Orford, Curry County, Oregon; that he was then under the supervision and jurisdiction of the State of Oregon; that on or about July 11, 1964, petitioner was taken into custody by the Sheriff of Curry County as a parole violator, that he was held until July 30, 1964, when he was delivered by the sheriff to officers of the State of Montana, who transported him back to the Montana State Prison.

In support of his contention petitioner refers partially or fully to the following provisions of the United States Constitution: (1) Article I, § 8, clause 3; (2) Article IV, § 1; (3) Article IV, § 2, clauses 1 and 2; (4) Amendment VI; and (5) Amendment XIV, § 1.

Petitioner's contention that various constitutional rights of his have been violated is not novel. In fact, the case of Pierce v. Smith, 31 Wash.2d 52, 195 P.2d 112, 114, certiorari denied 335 U.S. 834, 69 S.Ct. 24, 93 L.Ed. 387, decided on June 25, 1948, dealt with constitutional arguments that were very similar if not identical. The facts of the Pierce case are these: Pierce was convicted of a felony in Washington on November 10, 1939, and sentenced to twenty years in the state reformatory. Under provisions of the "Interstate Compact for the Supervision of Parolees and Probationers" Pierce was paroled to his home in Oregon City, Oregon. On January 13, 1943,

Pierce was convicted of a crime in Oregon and sentenced to one year in jail. Washington revoked his parole on March 5, 1943, and upon completion of his sentence in Oregon, Pierce was returned to the Washington state reformatory as a parole violator. Pierce was again paroled to his family in Oregon in April 1944, but upon the recommendation of the Oregon board, his parole was revoked, and he was returned to the Washington state reformatory. Pierce filed a petition for writ of habeas corpus in the Supreme Court of Washington on October 2, 1947, alleging among other things that he was unlawfully removed from Oregon without extradition and that his detention was in contravention of his constitutional rights.

The Supreme Court of Washington specifically pointed out that the Congress of the United States consented to interstate compacts such as the one Pierce was attacking by an Act of June 6, 1934, which is presently Title 4, U.S.C.A., § 112. Next the Washington Court pointed out that "All legal requirements to obtain extradition of fugitives from justice are waived on the part of states party to the compact as to such persons, and the decision of the sending state to retake a person on probation or parole, is conclusive upon and not reviewable within the receiving state." (116 of 195 P.2d.) The Washington Court noted that contentions that such interstate compacts are repugnant to Art. IV, § 2, clause 2, and the Fourteenth Amendment of the United States Constitution had been considered in Re Tenner, 20 Cal.2d 670, 128 P.2d 338, and rejected. Finally, the Washington court noted that "A parole is not a right, but a privilege to be granted or withheld, as sound official discretion may impel." (117 of 195 P.2d.)

Pierce was not satisfied with the Washington court's decision, and he sought relief in the federal courts, Pierce v. Smith, 175 F.2d 193. The United States Court of Appeals, Ninth Circuit, on June 2, 1949, denied Pierce any relief, and though the court felt that all the questions presented to the

Washington court were not properly before it, the court by way of dictum approved the Washington's court's decision.

At least four other Circuit Courts of the United States Court of Appeals have considered the various constitutional arguments raised by the petitioner. The case involed, the year and the circuit court are listed as follows: United States ex rel. MacBlain v. Burke, 200 F.2d 616, (1952, Third Circuit); Cook v. Kern, 330 F.2d 1003, (1964, Fifth Circuit); United States ex rel. Simmons on Behalf of Gray v. Lohman, 228 F.2d 824, (1955, Seventh Circuit); Caveny v. State of Illinois, 359 F.2d 787, (1966, Seventh Circuit); and Curtis v. Bennett, 351 F.2d 931, (1965, Eighth Circuit).

The above list of cases is not intended to be a complete list of the courts which have considered the problem.

We believe that petitioner confuses the rights which are extended to one charged with a crime and the conditions which the state may impose on a convicted felon as terms for his parole. In Curtis v. Bennett, supra, at 933 of 351 F.2d it is stated: "A parole is a matter of grace, not a vested right. A large discretion is left to the States as to the manner and terms upon which paroles may be granted and revoked. Federal due process does not require that a parole revocation be predicated upon notice and opportunity to be heard. (Citing previous cases)."

The Federal Court in United States ex rel. Simmons on Behalf of Gray v. Lohman, supra, at 826 of 228 F.2d, clearly pointed out the distinction in the two legal positions: "We might add that we discern no similarity between the situation wherein a person has been released on parole or probation and that where the person commits a crime and flees from the jurisdiction. In the former situation, a person is granted permission to take up his abode in another State and enters into an agreement with the sending State which, if violated, requires his return. Having entered into such agreement, it is not discernible how or in what manner his constitutional rights are

violated when it is sought, upon a violation, to obtain his return. Assuming, however, contrary to what we think, that any constitutional right is involved, it is waived by the agreement which the parolee makes with the state."

In order to secure his own parole, petitioner agreed to waive certain rights. He is now bound by his own waiver.

The petitioner's second contention is likewise without merit.

The writ sought is denied and the proceeding is dismissed.

MR. JUSTICES DOYLE, ADAIR, CASTLES and JOHN CONWAY HARRISON concur.