No. 14861

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

MICKEY GENE HANSEN,

Defendant and Appellant.

---

Appeal from: District Court of the Nineteenth Judicial District,
Honorable Robert M. Holter, Judge presiding.

Counsel of Record:

For Appellant:

Daley, Sherlock and Nardi, Kalispell, Montana
Stephen J. Nardi argued, Kalispell, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Richard Larson argued, Assistant Attorney General,
Helena, Montana
Paul Cooley (Student Intern) argued, Missoula, Montana
William A. Douglas, County Attorney, Libby, Montana
Shaun R. Thompson argued, Deputy County Attorney,
Libby, Montana

---

Submitted: December 10, 1979

Decided: APR 2 - 1980

Filed:

*Thomas J. Kearney*
_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Mickey Gene Hansen appeals from a felony conviction entered in the District Court, Missoula County, on a charge of sexual intercourse without consent.

Carol Birdsall, the complaining witness in this case, worked at a cafe in Eureka, Montana. After work at about 1:00 a.m. on September 2, 1978, she went to a bar next to the cafe. There she talked with defendant Hansen and a friend of Hansen's. The group had a drink and discussed the possibility of Birdsall getting some marijuana from Hansen.

After the bar closed, Hansen, his friend and Birdsall left the bar and proceeded out of town in Hansen's truck. They planned to smoke some marijuana. The group drove to a campground outside Eureka, parked and smoked the marijuana. Hansen's friend passed out at this point.

The testimony conflicts as to what happened next. Hansen stated he then returned Birdsall to her car in Eureka unmolested. Birdsall testified that she asked Hansen to take her home, but instead he drove her to an isolated part of the mountains. Birdsall stated Hansen then became suggestive and tried to fondle her. When she resisted, Hansen allegedly told her that she could have intercourse with him or walk home. Birdsall told Hansen she would walk home but he refused to allow her and told her he would wake his friend and both of them would rape her.

Birdsall testified that she and Hansen then got out of the truck and she started to walk away. As she did, Hansen allegedly grabbed her and they fell to the ground. Birdsall testified they struggled, Hansen twisted her thumb against her wrist, removed some of her clothing and forced intercourse with her.

After the act, Birdsall stated Hansen got back into the truck and drove the group back to Eureka. Birdsall stated

-2-

that Hansen told her nobody had to know about the incident driving back to Eureka.

Prior to trial, Hansen filed a motion in limine seeking to exclude any evidence of his involvement in prior crimes. The District Court denied the motion. At the trial, Gayle Yeager testified that Hansen had raped her approximately two and one-half years earlier. Yeager stated she knew Hansen and accepted a ride home from him after the bars closed. Instead of taking her home, Yeager testified Hansen drove her to an isolated area outside Eureka. When Yeager resisted advances Hansen made toward her, Hansen grabbed her, twisted her thumb against her wrist and raped her. Hansen then drove Yeager back toward town and told her not to report the rape. Hansen was convicted of aggravated assault on charges stemming from this earlier incident.

The sole issue raised by this appeal is whether the District Court erred in allowing the admission of evidence of the earlier sexual assault.

Evidence of other crimes is generally not admissible to show a defendant committed a particular crime charged. State v. Just (1979), ___ Mont. ___, 602 P.2d 957, 960, 36 St. Rep. 1649, 1652; State v. LaVe (1977), ___ Mont. ___, 571 P.2d 97, 100, 34 St.Rep. 1298, 1301; State v. Heine (1975), 169 Mont. 25, 27, 544 P.2d 1212, 1213; State v. Jensen (1969), 153 Mont. 233, 238, 455 P.2d 631, 633. There is, however, a notable exception to the general rule which the state relies on in this case. We stated the exception in Just, supra, as follows:

> "There emerges a four element test to determine
> the admissibility of evidence of other crimes
> or acts in criminal prosecutions such as the one
> here . . . The four factors are:

-3-

"1. similarity of crimes or acts;

"2. nearness in time; and

"3. tendency to establish a common scheme, plan, or system; and

"4. the probative value of the evidence is not substantially outweighed by the prejudice to the defendant." 602 P.2d at 961, 36 St.Rep. at 1653.

In applying the exception, each case must rest upon its own circumstances. State v. Merritt (1960), 138 Mont. 546, 549-50, 357 P.2d 683, 685. Further,

"'The general rule should be strictly enforced in all cases where applicable, because of the prejudicial effect and injustice of such evidence, and should not be departed from except under conditions which clearly justify such a departure. The exceptions should be carefully limited, and their number and scope not increased.' State v. Tiedemann (1961), 139 Mont. 237, 242-43, 362 P.2d 529, 531.

"Accord, State v. Sauter, 125 Mont. at 116, 232 P.2d at 734." Just, 602 P.2d at 962, 36 St.Rep. at 1656.

Thus, the rule concerning admission of evidence of other crimes and the exception to the rule are clearly set out in Montana. The problem presented by this case is applying the rule to the facts here.

Before applying the above test to the instant case, it should be noted that the Just case sets out procedural guidelines to follow in cases of this nature. Just, supra, 602 P.2d 962-964, 36 St.Rep. 1656-58. The procedures, however, do not have retroactive effect. Just, 602 P.2d at 963, 36 St.Rep. at 1657. Since this case was tried before the Just decision, failure to follow the procedures is not error.

The first element of the exception to the other crimes admission rule to be considered is the similarity of the prior crime to the charged crime. Definite similarities exist here. Each incident began in a Lincoln County bar. Both victims left the bar with Hansen in the early morning hours. Hansen drove both women into the mountains

-4-

and allegedly made advances toward them. When Birdsall
and Yeager resisted, Hansen grabbed them, twisted their
thumbs against their wrists and forced intercourse with
them. Hansen also drove both women back to town and told
them not to report the rape.

There are, however, differences between the crimes.
Hansen knew Yeager fairly well, but did not meet Birdsall
until the evening of the alleged rape. Yeager and Hansen
left the bar alone. Birdsall and Hansen left the bar
accompanied by a friend of Hansen's. Hansen threatened
Birdsall with multiple rape. He made no such threat to
Yeager.

Prior Montana cases speaking to the degree of similarity
necessary to satisfy this element of the other crimes exception
include Just, Jensen and Merritt. In Just, we found sufficient
similarity where the prior acts were all sexual, they involved
the same victim and the defendant always arranged to be at
home alone with the victim before committing the crime. 602
P.2d at 961, 36 St.Rep. at 1653-54. In Jensen, the court
also held the acts sufficiently similar. The Court did so
despite the fact that the defendant was charged with lewd
acts on a child and there was no proof any of the women who
testified to previous sexual assaults by the defendant were
under 16. Jensen, supra, 153 Mont. at 239, 455 P.2d at 634.
In Merritt, the defendant was charged with forgery. In the
crime charged, the defendant allegedly signed another's name
to a document. In the prior act, defendant purportedly
obtained a signature on a document by trickery. The Court
held the acts too dissimilar to qualify for the exception.
Merritt, supra, 138 Mont. at 550-51, 357 P.2d at 685.

The above summary of cases shows that in the past we have
considered each case on its particular facts. No set

-5-

standard appears to emerge from the cases. Case law from other jurisdictions holds that when the alleged similarities between crimes reveals nothing more than a sequence of events common in the crime charged, the acts are not unusual and distinctive enough to come within the purview of the exception. United States v. Myers (5th Cir. 1977), 550 F.2d 1036, 1045-1048, cert.den. 439 U.S. 847; People v. Weathers (1969), 79 Cal.Rptr. 127, 131-32, 274 Cal.App.2d 232; People v. Haston (1968), 70 Cal.Rptr. 419,427-428, 69 Cal.2d 233; 444 P.2d 91, 99-100. The California Court explained the rationale for this requirement as follows: ". . . those common features which appear to be distinctive . . . lose this quality when it is considered that all who commit this type of scheme usually follow approximately the same script and use similar props." Weathers, supra, 79 Cal.Rptr. at 131.

We find the rationale expressed by the California Court persuasive. Further, cases of this nature involve the application of an exception to the other crimes rule. That rule is based on the sound principle that a person should only be placed in jeopardy for the crime charged, not prior wrongful acts. Any exception to the rule must be strictly construed and well defined. Just, supra, 602 P.2d 962, 36 St.Rep. at 1656; State v. Tiedemann (1961), 139 Mont. 237, 242-43, 362 P.2d 529, 531. Adopting the position taken by the commentators and in other jurisdictions is a move toward achieving that goal. We therefore adopt the position.

Under this standard, the other crime here is not sufficiently similar to satisfy the first element of the exception to the other crimes admission rule. Numerous rapes follow the pattern of barroom pickup, voluntary entry into the offender's vehicle by the victim, driving to a remote area,

-6-

advances, resistance and forcible intercourse. The
sequence of events has no distinctive qualities that dist-
inguish the acts from other rapes thus bringing the events
within the purview of the similarity element of the other
crimes admission rule exception.

The second element of the exception to be considered
is the nearness in time of the prior act to the charged
crime. The question of remoteness in time is generally a
discretionary matter for the District Court. State v. Nicks
(1958), 134 Mont. 341, 342, 332 P.2d 904. Nicks also points
out, ". . . However it is not an uncontrolled discretion
and if this court regards the matter too remote it should
have no hesitancy in ruling that there has been an abuse
of discretion." 134 Mont. at 342, 332 P.2d at 904.

The crimes here are separated by two years, six months
and one week. Although a three year interval between a
prior act and the charged crime is close to the limit of
being too remote, other acts occurring three years prior
to the crime have been held admissible when the acts engaged
in by the defendant constitutes a continuing course of
conduct. Just, supra, 602 P.2d at 961, 36 St.Rep. at 1654;
Heine, supra, 169 Mont. at 31-32, 544 P.2d at 1215 (Mr. Justice
Castles specially concurring); Jensen, supra, 153 Mont. at
239, 455 P.2d at 634. Factors that affect the determination
of whether a prior act is too remote includes the number of
incidents that have occurred, the nature of the incidents
and the proximity of the last act to the date of the occurrence
of the conduct at issue. State v. Minns (1969), 80 N.M.
269, 454 P.2d 355, 358.

Viewing this case in light of these decisions, we
find the District Court abused its discretion in holding
Hansen's prior act was near enough in time to the crime
charged to satisfy this element of exception. It was not

sufficiently similar to the prior act to meet the test established in Montana for holding an act sufficiently similar to qualify for the exception. Further, the last and only act occurred at least 2 1/2 years prior to the alleged rape here. Under these circumstances, the acts are too remote to fall within this element of the other crimes admission exception. See also, State v. Treadaway (1977), 116 Ariz. 163, 568 P.2d 1061, 1064, n. 2; State v. Gammons (1963), 258 N.C. 522, 128 S.E.2d 860, 862; Annot. 88 A.L.R.3d 8 (1978).

The facts here also fail to meet the criteria for the third element of the exception to the other crimes admission rule. The third leg of the exception requires other crimes to tend to establish a common scheme, plan or system. We addressed the issue of what constitutes a common scheme, plan or system in State v. Sauter (1951), 125 Mont. 109, 232 P.2d 731. In Sauter, the defendant and a companion picked up a woman in a bar. The group left to drive to another town. Once on the road, both men raped the woman. Evidence introduced at the defendant's trial showed he had been with a group of four men a month earlier who had picked up a woman in a bar and left the bar with her to give her a ride home. Instead, they drove the woman to an isolated location and raped her. The Court held the evidence of the first rape inadmissible stating, "Sexual acts, whether rape or no rape, originating in barroom pickups, powered by the urge, and consummated in automobiles, are entirely too common in this day and age to have much evidentiary value in showing a systematic scheme or plan." Sauter, 125 Mont. at 112, 232 P.2d at 732.

Sauter deals a serious blow to the State's case here. The facts in Sauter are very similar to the instant case. If anything, Sauter presents a stronger indication of a plan

-8-

or scheme because it involves a multiple-party rape, less common than single party rapes, and the rapes occurred within a month of each other.

Hansen and Yeager left the bar alone on the previous crime. In the crime charged here, Hansen and Birdsall left the bar in the company of a third party. If Hansen's plan or system was to pick up his victims in bars, drive them to isolated locations and then rape them, why did he allow a third party to leave the bar with him? That type of scheme obviously does not include bringing someone along to witness the rape. It could be argued Hansen and his companion both planned to rape Birdsall. Birdsall testified that Hansen threatened her with multiple-party rape. That type of scheme is also inconsistent with the evidence of the prior crime testified to by Yeager. In short, the conduct engaged in by Hansen on these two occasions simply does not establish a common method of operation in committing the crime charged. The conduct therefore does not satisfy this element of the exception to the admission of other crimes rule.

Consideration of the final element of the exception to the other crimes rule requires a determination of whether the probative value of the evidence is substantially outweighed by the prejudice to the defendant. Prejudice in cases such as this manifests itself in three forms. First, proof of other offenses subjects a defendant to surprise by requiring a defendant to defend against a crime not charged. LaVe, supra, 571 P.2d at 100. 34 St.Rep. at 1301. Second, the jury might overestimate the probative value of the evidence and assume that merely because the defendant has committed crimes before, he is likely to be guilty of the crime charged. 87 Harvard L.Rev. 1074, 1076. Recent Cases: Evidence (1974). Third, the evidence may indicate to the jury that the

-9-

defendant is a proper candidate for punishment. Just, supra, 602 P.2d at 963, 36 St.Rep. at 1656; 87 Harvard L. Rev. supra, at 1076.

The first manifestation of prejudice does not exist in this case. The State notified Hansen three months before trial that Yeager would testify. The State also provided Hansen with a copy of Yeager's statement to the police made after the first incident. Hansen cannot claim prejudice or surprise under these facts.

The other indications of prejudice are more difficult to measure. Jury instructions explaining the limited purpose for which the jury is to consider evidence of other crimes reduce the prejudicial effect of the evidence. 2 Weinsteins Evidence §404-70 (1979). A cautionary instruction was given here thus reducing the prejudicial effect of the evidence. However, as the above analysis indicates, the acts involved here were not sufficiently similar or near in time to indicate the commission of the first act had probative value in determining if Hansen committed the charged crime. Neither does the commission of the acts establish a common scheme, plan or system. The introduction of the first act therefore has very little probative value in establishing any fact in issue in Hansen's trial. On the other hand, the introduction of the evidence certainly worked to prejudice Hansen's case. As we stated in Just ". . . Evidence of other acts, especially of the nature testified to in this case, invariably will result in prejudice to the defendant to a certain degree." 602 P.2d at 961, 36 St.Rep. at 1654.

Given the lack of probative value of the evidence of the other crime here and the amount of prejudice inherent in showing a defendant has committed a prior sex offense, we conclude the prejudicial effect of introducing such evidence here substantially outweighs its probative value.

-10-

The facts here fail to bring this case within the exception to the admission of other crimes rule. We therefore reverse the conviction of the defendant and remand the case to the District Court for retrial.

_John C. Sheehy_____
                                    Justice

We Concur:

_Frank I. Haswell_____
        Chief Justice

_Gene B. Daly_____


_John Conway Harrison_____




_____
            Justices

Mr. Justice Daniel J. Shea concurring:

I agree with the result but I do not agree with the majority analysis. As I stated in a dissent in the case of State v. Just (1979), ___ Mont. ___, 602 P.2d 957, 36 St.Rep. 1649, unless a need is first established for the admission of evidence of other crimes, the trial court should proceed no further in exercising its discretion as to whether or not to admit the evidence. It should not be admitted. No need was first established here, and for that reason, I would reverse the case.

Since evidence of this kind is so inherently prejudicial, I would require that a trial court, in admitting evidence of

-11-

this kind, first enter a lengthy order detailing precisely what factors it considered and its reasons for admitting the evidence.  This is the only way the parties and an appellate court can ever be assured that the factors involved were carefully weighed and that the decision to admit the evidence was not lightly made.

Thus, no need having been demonstrated in the record for use of such evidence, I would reverse the conviction. My position does not require an analysis of whether or not there was compliance with the four point test as discussed by the court.

-------------------------------------
                Justice