No. 80-159

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

CRISS ALLEN CASE,

Defendant and Appellant.

Appeal from: District Court of the First Judicial District,
In and for the County of Lewis and Clark.
Honorable Peter Meloy, Judge presiding.

Counsel of Record:

For Appellant:

Hull and Sherlock, Helena, Montana
Jeffrey Sherlock argued, Helena, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Charles Graveley, County Attorney, argued, Helena,
Montana

Submitted: November 18, 1980

Decided: DEC 29 1980

Filed: DEC 29 1980

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Defendant Criss Allen Case appeals from his conviction in the District Court, First Judicial District, Lewis and Clark County, of one count of robbery. For reasons hereinafter set forth, we reverse the conviction and dismiss the charge.

Defendant raises the following issues on appeal:

1. Was defendant denied his right to a speedy trial where 340 days elapsed between the filing of the information and trial?

2. Was sufficient evidence presented at trial to support a conviction?

3. Was the accomplice testimony of Ron Worden sufficiently corroborated?

4. Was evidence of other crimes properly admitted?

5. Did jury instructions allowing permissive inferences shift the burden of proof?

Case and his three codefendants Rick Worden, Ron Worden and Austin Metcalf drove to Montana together from California in November 1978. During the trip, the men discussed plans for robberies of roadhouse saloons, purchased a gun and tape for restraining victims, and cased a number of bars as potential robbery sites before arriving in Montana.

On November 7, 1978, the Worden Brothers robbed Mac's Bar in Wolf Creek while Case and Metcalf remained outside in the car. The victims of the robbery, Charles and Carol Marcus presented no evidence concerning defendant, and neither could identify him as having participated in the crime. Emil Kersey, a patron who left the bar immediately preceding the robbery, saw the getaway car as he departed and noticed someone he identified as a blonde woman sitting

-2-

in the driver's position. Other testimony concerning the Wolf Creek robbery was presented primarily by Ron Worden, who had turned State's evidence, and also by Deputy Richard Hammerbacker who had taken statements from Rick Worden and Metcalf.

On the evening of November 8, 1978, the day following the Mac's Bar robbery, defendant and his companions robbed a bar in Loring, Montana. All four men participated in that robbery, which involved multiple kidnappings and homicides as well as robbery. Defendant has already been tried and convicted for his participation in the Loring robbery. He has been sentenced to a total of 175 years in connection with that incident. That sentence is unrelated to and not affected by this appeal.

On November 30, 1978, Case was charged by information in Lewis and Clark County with robbery. He was tried for that offense under the accountability statute, section 45-2-302, MCA. Trial was eventually commenced on November 5, 1979, 340 days after the filing of the information. Defendant appeals from a verdict and judgment of guilty.

The Attorney General did not participate in oral argument.

The speedy trial issue here is essentially identical to the issue presented and discussed in detail in State v. Worden (1980), _____ Mont. _____, 611 P.2d 185, 37 St.Rep. 869. The only material distinction here from Worden is a delay of an additional 19 days before commencement of this trial. The relatively minor additional delay here under the same facts as Worden is not so substantial as to pursuade us to abandon the position we adopted in Worden. Defendant was not denied his right to a speedy trial.

Defendant questions the sufficiency of the evidence on

-3-

three separate bases: (1) the essential element of fear was never directly established; (2) the testimony of Ron Worden indicated defendant's actions did not bring him within the accountability statute; and, (3) a fatal variance existed between the matters alleged in the information and the proof adduced at trial. None of these arguments are persuasive.

Defendant urges that under State v. Merseal (1975), 167 Mont. 412, 538 P.2d 1366, the State's failure to elicit direct testimony from the Marcus' that they were placed in fear leaves that element unproven. The factual situation here is substantially different than that in Merseal, and the latter does not control.

In Merseal, defendant was driving a car in which a police officer was a passenger. Defendant slowed the car, moved to jump out of the vehicle and also reached toward the floor of the auto, where it was suspected he had a concealed gun. The officer, who was armed, drew his weapon and restrained defendant. The officer, allegedly the victim of an assault, did not testify that he had experienced fear.

Here the robbers were in more complete control of the situation. Rick Worden inquired of Charles Marcus at gunpoint if he understood about robbery. Charles and Carol Marcus were placed face down on the floor, and bound with tape, while the robbers took the money in the till, whiskey and cigarettes. The victims were then admonished not to move for a quarter hour after the thieves' departure. While the only testimony which served as an admission of fear was Carol Marcus' statement: "Well, I understood it that they meant they would kill us if we didn't (remain on the floor)," actual fear may be deduced by the jury when the victims are placed under such total domination by the

-4-

offenders. It is well within the province of the jury to determine that fear exists in such a situation.

Rick Worden's brandishing of the gun could hardly be anything less than sufficient circumstances to place the victims in fear. The Marcus' compliance with Worden's orders and their total submission indicated a fear of the consequences of failure to do so. It would be contrary to the common experience of all mankind to conclude that a person would experience no fear when confronted with a robber wielding a gun. Daellenbach v. State (Wyo. 1977), 562 P.2d 679.

Defense counsel elicited undisputed testimony from Ron Worden that Case did not engage in any of the acts proscribed by section 45-2-302(3), MCA, either before the robbery or during the time the Wordens were actually in Mac's Bar. Defendant therefore argues that his complicity arose, if at all, only after the robbery had concluded -- thus removing Case from any accountability for the robbery.

Ron Worden also testified that Criss Case drove the car during the getaway from Mac's. Defendant's argument here is dependent on the validity of his conclusion that the robbery ended the moment the Worden brothers stepped outside the bar. However, in Montana, the ensuing flight is considered part and parcel of a robbery until such time as the criminal purpose, including carrying away of the spoils of the crime, is completed. State v. Jackson (1924), 71 Mont. 421, 230 P. 370. Here, defendant's involvement commenced before the robbers had reached a place of seeming security and before the proceeds had been divided. By serving as a getaway driver, defendant aided the Wordens in the commission of the robbery, and became liable for the robbery under section 45-2-302, MCA.

Defendant's third assault on the evidence adduced at trial is that it failed to establish the robbery in the mode specified in the information -- purposely or knowingly put the bar owners in fear of immediate bodily injury. Defendant argues that the state's failure specifically to prove fear, where fear was specifically alleged, is fatal. This argument evaporates in light of our above ruling that the fear element was indeed sufficiently established.

We turn now to the issue of corroboration of accomplice testimony. The state's major witness was Ron Worden, who testified regarding the events which occurred from the time the four men left California through the commission of the Loring robbery. It was Worden's testimony that placed Case behind the wheel in the getaway vehicle. The only other testimony regarding defendant's possible presence and participation was presented by Kersey, Hammerbacker and Officer Ralph Schmoldt, a jailer who overheard defendant express anger at Ron Worden because, "Ronny had turned State's evidence on some robberies and other things that had gone on." The District Court ruled Kersey's testimony sufficient to corroborate Worden.

Section 46-16-213, MCA, mandates that accomplice testimony be corroborated by other independent evidence which tends to connect the defendant with the offense. The quantum and character of this requisite proof has been recently discussed in State v. Kemp (1979), _____ Mont. _____, 597 P.2d 96, 36 St.Rep. 1215:

> "To be sufficient, corroborating evidence must show more than that a crime was in fact committed or the circumstances of its commission. (Citation.) It must raise more than a suspicion of the defendant's involvement in, or opportunity to commit, the crime charged. (Citation.) But corroborative evidence need not be sufficient, by itself, to support a defendant's conviction or even to make out a prima facie case against him.

-6-

(Citations.) Corroborating evidence may be circumstantial (Citation.) and can come from the defendant or his witnesses. (Citation.)

" With these principles in mind, each case must be examined on its particular facts to determine if the evidence tends, in and of itself, to prove defendant's connection with the crime charged.

"One accomplice cannot supply the independent evidence necessary to corroborate another accomplice. (Citations.)" 597 P.2d at 99, 36 St.Rep. at 1217-1218.

The corroborative evidence must clearly:

(1) Be independent

(2) Point toward defendant's guilt, and

(3) Provide a legally sufficient connection between defendant and offense.

See, Civil Procedure and Evidence, Montana Supreme Court Survey, 41 Mont.L.Rev. 293, 319 (1980).

Deputy Hammerbacker's testimony concerned statements he had taken from Rick Worden and Austin Metcalf in Las Vegas, Nevada. Coming from accomplices, the evidence cannot be considered independent. Kemp, supra.

Emil Kersey provided independent evidence insofar as he saw a person, a blonde female, in the driver's position of the getaway vehicle. Kersey could not identify the husky red-haired defendant as that person, however. The testimony thus implicates defendant only when viewed in conjunction with Ron Worden's and therefore is also not independent.

Officer Schmoldt's testimony was fully independent, but vague. The Wolf Creek robbery was not mentioned by defendant, whose anger at Worden could just as easily be attributed to the Loring robbery or some other intervening incident. The expression of anger at Worden is not more consistent with complicity than noncomplicity in the Wolf Creek robbery. It is therefore insufficient as corroboration. State v. Keckonen (1938), 107 Mont. 253,

264, 84 P.2d 341, 346.

The State has clearly failed to present any evidence corroborative of accomplice testimony. This failure necessitates reversal.

The State presented testimony at trial, through Ron Worden, of the planning and commission of the Loring robbery. The evidence was presented for the limited purpose of showing defendant's intent, preparation, plan and knowledge. The specific details of the Loring robbery, other than its commission, were not revealed. Defendant argues on appeal that all evidence relating to the Loring robbery was improperly admitted. We agree.

We have repeatedly expressed our concern over the widespread use of other crimes evidence. Our apprehension has led us to apply the general rule against use of evidence of other crimes, and to allow such evidence only under closely limited circumstances. Toward this end, we have established substantive and procedural guidelines for application of the exception, which we have set forth in State v. Just (1979), _____ Mont. _____, 602 P.2d 957, 36 St.Rep. 1649. In this instance, neither the substantive nor the procedural requirements have been fulfilled.

Admissibility of evidence of other crimes is to be determined by the District Court pursuant to a four element test:

(1) Similarity of crimes;

(2) Nearness in time;

(3) Tendency to establish a common scheme, plan or system, and;

(4) The probative value of the evidence is not substantially outweighed by prejudice to the defendant. Just, supra, 602 P.2d at 961, 36 St.Rep. at 1653. Only the time

factor has been met here.

First, the Wolf Creek and Loring robberies were too dissimilar to allow the State to invoke the other crimes exception. Where the alleged similarities between the crimes reveal little in common other than a sequence of time from the crime charged, the acts are not unusual and distinctive enough to come within the purview of the similarity element of the exception. State v. Hansen (1980), _____ Mont. _____, 608 P.2d 1083, 1087, 37 St.Rep. 657, 661.

In Wolf Creek, the Wordens robbed the bar using no force other than threats, while Case and Metcalf waited in the car. In Loring, all four men entered the bar, each man assumed a predesignated duty station, and the ensuing violence resulted in multiple homicides. The two incidents are similar only in that both involved barroom robberies. That sole similarity between the two is clearly not sufficient to trigger the exception.

Next, the crimes do not tend to establish a common scheme, plan or system. Again, the crimes were carried out in vastly dissimilar fashion within the pervasively common scenario of the barroom holdup. Absent proof of any further distinguishing event peculiar to the commission of both crimes, no common scheme exists. Hansen, supra.

Finally, the probative value of the evidence must be weighed against prejudice to the defendant. Evidence of other crimes invariably will result in prejudice to a defendant to a certain degree. The likelihood of such prejudice was compounded here, where the other crime had been highly publicized. The lack of probative value of the evidence of the other crime, coupled with the prejudice inherently connected with the admission of such evidence,

-9-

compels our conclusion that the prejudicial effect outweighed its probative value.

This case does not on its facts fall within the exception to the general rule barring evidence of other crimes. The improper admission of the evidence under the exception is reversible error.

Once having determined that evidence of other crimes is admissible, which we again emphasize should only occur under limited conditions justifying a departure from the general rule, the court must follow the procedural requirements set forth in Just, 602 P.2d at 963-964, 36 St.Rep. at 1657-1658. Failure to adhere to the procedural mandates of Just constitutes error. This case was tried two months after we handed down Just, yet none of the prescribed procedures were met.

First, the State must provide written notice to the defendant, before the case is called for trial, that the evidence is to be produced. The notice must include a statement of the purposes for which the evidence is to be presented. Here, defendant received no written notice whatsoever; before trial the State had verbally indicated only that it might present such evidence; and the defendant was finally apprised of the State's definite intention to present the evidence, and of the purpose for that presentation, only at the conclusion of the first day of trial.

Next, the trial court must, at the time the evidence is introduced, explain to the jury the purpose of the evidence and admonish the jury to weigh the evidence only for those purposes. The Court did not so instruct the jury.

The final procedural step requires:

"In its final charge, the court should instruct the jury in unequivocal terms that such evidence was received only for the limited purposes earlier stated and that the

defendant is not being tried and may not be convicted for any offense except that charged, warning them that to convict for other offenses may result in unjust double punishment." 602 P.2d at 964, 36 St.Rep. at 1658.

The jury was instructed regarding such evidence as follows:

"Evidence of other crimes, wrongs, or acts is not to be used by you to prove the character of the defendant to show that he acted in conformity therewith, nor is such evidence to be used by you as evidence that the defendant committed the act with which he is charged. However, evidence of other crimes, wrongs or acts may be considered by the jury for other purposes such as proof of intent, opportunity, maintenance, preparation, plan or knowledge."

The specifically required unequivocal warning of the possibility for unjust double punishment was not included. Hence, the jury was inadequately instructed in its final charge.

Again, the failure to provide necessary procedural safeguards prejudiced defendant. This failure, of itself dictates reversal.

Finally, defendant argues certain jury instructions improperly shifted the burden of proof. The instructions complained of allowed the jury to infer knowledge and intent on the part of the defendant. Defendant submits the instructions violated the spirit and intent of Sandstrom v. Montana (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39. We disagree.

We have previously considered the validity of similar instructions allowing permissive inferences, State v. Sunday (1980), ____ Mont. ____, 609 P.2d 1188, 37 St.Rep. 561; State v. Wogamon (1980), ____ Mont. ____, 610 P.2d 1161, 37 St.Rep. 840, and have determined such instructions place no burden on defendants. We stated in Sunday:

"Since a permissive inference is involved,

-11-

Sunday must show the invalidity of the inference as applied to him. Sunday must show there is no rational way under the facts of this cause for the jury to make the connection permitted by the inference. Only then is there a risk the presumptively rational jury will use the inference to make an erroneous factual determination. (Citation.) Sunday has not carried his burden upon appeal." 609 P.2d at 1196, 37 St.Rep. at 569.

The same reasoning applies here. Defendant was not prejudiced through the use of permissive inferences.

Reversed and dismissed.

_____
                    Justice

We Concur:

_____
Chief Justice

_____
Justices

-12-

Mr. Chief Justice Frank I. Haswell, specially concurring:

I concur in the result of the foregoing opinion but not with all the statements and discussion contained therein.

_____
Chief Justice


Mr. Justice Daniel J. Shea concurs and will file a concurring opinion at a later time.

--------------------------------------------------------------

THE STATE OF MONTANA

    VS.

                         No. 80-159

CRISS ALLEN CASE


--------------------------------------------------------------


CONCURRING OPINION OF MR. JUSTICE DANIEL J. SHEA

--------------------------------------------------------------


Dated:   January 5, 1980



FILED

JAN 5 1981

Thomas J. Kearney

CLERK OF SUPREME COURT
STATE OF MONTANA

Mr. Justice Daniel J. Shea concurring:

Generally, I concur in the majority opinion. The evidence was legally insufficient, and therefore a reversal and dismissal is required. Even if the evidence was sufficient to convict, the failure of the State to comply with the mandate of State v. Just, supra, as the opinion states, would require a reversal and a new trial. I would like to comment on the State's failure to comply with Just.

I dissented in Just because the defendant was not given the benefit of the ruling--which would have required a reversal and a new trial. I also stressed the importance of the trial court to first assess the State's need for the similar-crimes evidence, and then determine whether the evidence, if admitted, would be unduly prejudicial. Undoubtedly, the State needed the evidence--with the testimony from the accomplice about the other robbery, it tended to show that defendant and the accomplice were involved in a common scheme or plan. This was an attempt of the State to pull accomplice testimony up by its own boot straps--clearly improper. Assuming the admissibility of the accomplice testimony as to the robbery at Loring, the trial court without question failed to consider the potential harmful effects that the testimony would have as to the Loring robbery. The so-called similar crime, was not only a robbery; it involved multiple brutal murders committed by the accomplice and the defendant. I doubt that any juror could fairly state that he had not heard nor read about the robbery and murders at Loring. Therefore, even if there was no direct reference to the murders committed in the process of the robbery at Loring, there is no doubt that the jury knew it had a person on trial who was involved in the Loring murders. Proper consideration of these factors before admitting the testimony, would have led to a decision

-14-

that the accomplice testimony as to the Loring robbery was loaded with prejudice that could never be overcome.

I stress that just because State v. Just, supra, sets out the procedural requirements for admission of similar crimes, it does not mean that the trial court should always admit such evidence when it is offered. The trial court should carefully scrutinize the attempted use of such evidence and the potential prejudice that will ensue, and where he has any doubt, it should be resolved against use of such evidence.

Finally, the conviction of defendant in this case, has, as its underlying cause, a manifest abuse of prosecutorial discretion. We must remember that at the time defendant was tried for the Wolf Creek robbery, he was already under sentence of 175 years in prison for the Loring robbery and murders.

It is perhaps understandable that the prosecutor first filed robbery charges against defendant arising from the Wolf Creek robbery, for then the prosecutor was not confronted with the thin evidentiary case and the legal requirements as to corroboration of accomplice testimony. Maybe his initial charge was supported by legally sufficient probable cause, I don't know. But as the case neared the trial stage, the prosecutor knew or should have know that he did not have sufficient legal evidence on which to base a conviction that would withstand the legal requirements. Therefore, he had every reason to believe that a conviction would ultimately lead to a reversal and a dismissal. Also, assuming that the prosecutor was unaware of the rigorous requirements for accomplice testimony, it is sad that he succeeded in getting the Loring robbery evidence admitted when there was not even an attempt to comply with State v. Just. It is not unreasonable to conclude here that the Loring robbery evidence, coupled with the widespread press coverage of the Loring murders, sealed the defendant's fate before the jury.

Daniel J. Shea
Justice

-15-